## Jones *versus* Jones.

1. The treatment which is a ground of divorce *a mensa et thoro* under the Act of February 26th 1817, is actual personal violence to the wife or reasonable apprehension of it, or such a course of treatment as endangers her life or health and renders cohabitation unsafe.

2. "Cruel and barbarous treatment" in the Act of May 8th 1854 is to have the same meaning as in the Act of 1817.

3. Acts of cruelty and barbarous treatment are not, under the Act of 1854, to be limited to those alone which endanger life.

4. The Act of 1854 does not require that the treatment to be a ground for divorce, should include "indignities to the person."

5. The treatment to the husband as a ground of divorce is that which renders his "condition intolerable and his life burdensome," which includes those acts that endanger life.

6. Gordon *v.* Gordon, 12 Wright 226, criticised.

November 9th 1870. Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Appeal from the decree of the Court of Common Pleas of *Allegheny county:* Of October and November Term 1869, No. 177.

Jerome Jones filed his libel in divorce against Mary L. Jones, in which he set forth that on the 31st of October 1865, he was married to Mary L. Sweeney, now Jones, the respondent, &c.

\* \* "That the said Mary Jones has, by cruel and barbarous treatment, rendered the condition of the libellant intolerable and life burdensome, having since the 22d February 1866 wholly refused and failed so to conduct and behave herself as to aid in any manner in living in harmony with the libellant without having any just cause or provocation by him offered; that the said Mary has at divers times made threats, saying, that the libellant shall die, threatening to take his life and commit murder; that his the libellant's life is not safe at any time; that she has poison in the house, and has frequently so asserted; when threatening his life she has threatened to burn the dwelling-house and home of the libellant, and from her often malicious and repeated threats he is kept in continual jeopardy of life and property, and does not feel safe night or day lest Mary L. shall carry into effect some or all of her said threats. She further has threatened of and concerning the libellant's aged mother who has lived in his house and family for over eight years, and made her home there, being now about eighty years old; that she (said mother) shall die if libellant keeps her there; and in consequence of such threats he has been compelled to have his mother remain away from home, fearing lest this threat may be carried into effect. He gave Mary L. Jones full charge of his house when he brought her home, and desired her to conduct his domestic affairs, but in a short time she, without cause, declined to so conduct the same, and has since that time contributed by various annoyances,

[Jones *v.* Jones.]

wilful and malicious acts and threats, to disturb the peace and happiness of his household, refusing to aid in any way in the business and affairs of the same, except when she interfered with those whom he directs to do the work, plainly showing that her object is to drive peace and happiness away from his home; and that she often ordered libellant to put from their home his children, and as often ordered libellant to drive them away, though they were instructed and disposed to treat her as a mother, and as far as the libellant knows or was informed, did so treat and obey her." * * *

The respondent in her answer admitted the marriage, but denied every allegation in the libel, and added:—

That she did do and perform her duty as a faithful and kind wife towards the said Jerome Jones, but that he treated her with barbarity, cruelty and violence. * * *

A large amount of testimony was taken tending to prove the allegations in the libel and by the respondent in answer, and also to show the value of the libellant's estate. The testimony as condensed in the opinion of Judge Agnew, will sufficiently exhibit the case on the facts.

The proceeding was under the Act of May 8th 1854, § 1, Pamph. L. 644, Purd. 346, pl. 7. The material provision is as follows:—

"In addition to the cases now provided for by law, it shall be lawful for the Courts of Common Pleas of this Commonwealth, to grant divorces in the following cases : * * *

"3. Where the wife shall have, by cruel and barbarous treatment, rendered the condition of her husband intolerable, or life burdensome: *Provided*, that in cases of divorce under this act, if the application shall be made on part of the husband, the court granting such divorce shall allow such support or alimony to the wife, as her husband's circumstances will admit of, and as the said courts may deem just and proper."

On the 17th of February 1869, the court decreed a divorce *a vinculo matrimonii:* "And further decreed, that the said libellant, Jerome Jones, do pay to the respondent the sum of $120 per annum, in quarterly payments, from the date of this decree."

The respondent appealed to the Supreme Court and assigned for error:—

1. Making the decree of divorce *a vinculo matrimonii*, on the testimony.

2. Not allowing the appellant a greater annual "support or alimony."

*W. Blakely*, for appellant.—The facts do not bring the case within the Act of 1854; it does not amount to actual personal violence or a reasonable apprehension of it: Gordon *v.* Gordon, 12 Wright 238; Butler *v.* Butler, 1 Parsons' Rep. 329.

*A. M. Watson*, for appellee.

[Jones v. Jones.]

The opinion of the court was delivered, January 3d 1871, by

Agnew, J.—Marriage and the family relation lie at the very basis of social life, and the deep stake society has in their sanctity has led courts to be strict in the construction of the causes of divorce. The cruel and barbarous treatment which is a ground of divorce, *a mensa et thoro*, under the Act of 1817, has been held to be actual personal violence to the wife, or the reasonable apprehension of it; or such a course of treatment as endangers her life or health, and renders cohabitation unsafe: Butler *v.* Butler, 1 Pars. Eq. Cas. 344. This definition of Judge King has been frequently approved of. Neither the Act of 1815 nor that of 1817 made cruel and barbarous treatment on part of the wife a cause of divorce for the husband. This was first done by the Act of 8th of May 1854, the 3d section of which made it a cause, " where the wife shall have, by cruel and barbarous treatment, rendered the condition of her husband intolerable or life burdensome." In Gordon *v.* Gordon, 12 Wright 226, this act came up for interpretation, and it was there held that the words cruel and barbarous treatment, therein stated, are to have the same meaning as the same words in the Act of 1817 had received. This we are disposed to adhere to, not only because it comports well with the true policy of the state in preserving the sanctity of the marriage tie, but because it produces consistency in the administration of the law of divorce, and prevents that confusion which arises by nice distinctions drawn between the words of the different acts. But Justice Strong, in delivering the opinion in Gordon *v.* Gordon, suggested that perhaps the language of the Act of 1815 solves the interpretation of these words by describing them as such treatment as *endangers life*, and gives as a reason that otherwise the husband may obtain divorce for a less degree of cruelty than would suffice to entitle the wife to a divorce. This being but a supposition, and not advanced as an opinion, we are at liberty to consider it as no more than a bare impression of that learned and able judge. A careful consideration of the Acts of 1815 or 1817, which in this part is a transcript of the former, and the Act of 1854, will convince us that to limit the acts of cruelty and barbarous treatment in the Act of 1854 to those that endanger life alone, is not consistent with its own language or the entire provision of the Acts of 1815 and 1817. The language of the Act of 1854 is: " When the wife shall have, by cruel and barbarous treatment, *rendered the condition of her husband intoleraable or life burdensome.*" The language of the Acts of 1815 and 1817 is : " When any husband shall have, by cruel and barbarous treatment, *endangered his wife's life, or offered such indignities to her person as to render her condition intolerable and life burdensome.*" It is evident that the legislature, in the Act of 1854, intended to narrow the causes of divorce in the husband's case to

[Jones v. Jones.]

"*cruel and barbarous treatment*," leaving out the "*indignities to the person*," which are causes of divorce for the wife, under the Act of 1815, in the belief, no doubt, that for the latter the husband needed no protection by a severance of the relation. But by express words the cruelty and barbarous treatment to the husband, given to him as a cause of divorce by the Act of 1854, are extended in their effects to rendering his condition intolerable and his life burdensome. From the nature of the thing, this would also include those acts which endanger his life. And this does not, as Mr. Justice Strong supposed, enlarge the cause of divorce given to the husband beyond that of the wife, for in her case, under the Acts of 1815 and 1817, she is entitled to a divorce not only for cruelty and barbarous treatment endangering her life, but for *indignities to her person*, such as render her condition intolerable and her life burdensome. Thus both clauses of the Act of 1815, or that of 1817, when taken together, extend her grounds of divorce beyond those contained in the combination of these two clauses into one in the Act of 1854, which restricts the causes of a husband's divorce to *cruelty and barbarous treatment*, while it enlarges their effects to a condition of life rendered intolerable and made burdensome by them. Adopting, then, the definition given to the words cruelty and barbarous treatment in Butler *v.* Butler, *supra*, and extending their effects to the condition of life described in the Act of 1854, as intolerable and burdensome, the facts of this case can be readily considered and compared with the rule. Thus we find the wife using acts of actual violence to the person of her husband, and endeavoring to prevent his entrance into the room of his sick child, who had been rendered frantic by her barbarous and disturbing noises. By pounding and other acts, as well as by opprobrious epithets, she would also endeavor to disturb, vex and annoy him. By her threats of poison and burning, she kept him in constant fear; and by her whole conduct toward him so affected his mind and health as to cause him to be greatly distressed and to look haggard and pale. She also threatened him with death and his family with danger; would cast things off the cooking-stove, compel the family to withdraw to the wash-house and cook their meals there; threatened to cut down the door of the old grandmother of eighty years of age, who finally withdrew from the house, and in many different ways vexed and annoyed her husband. Indeed, if half that is told by the witnesses be true, no life but would become intolerable and burdensome under her constant inflictions. The evidence shows, also, that these threats against life and property were such as carried conviction of danger to his mind, and caused him to keep watch lest she should execute them. Threats that are both serious and diabolical in their nature and produce alarm and dread are in themselves acts. They are not like mere words of reproach,

16 P. F. SMITH—32

[Jones *v.* Jones.]

or anger, or false imputation, but impress the mind with fear and tend directly to endanger health and may even peril life.

In view of all the evidence, we are not able to say the court committed any plain mistake. As to the alimony, we cannot say there is anything in the evidence to show that the circumstances of the plaintiff will admit of any increase.

Decree affirmed.