Theodore N. Barnsdall, Appellant, *v.* Louisa A. Barnsdall.

171    625
27 SC ¹332
f 27 SC ³333
171    625
33 SC ³327
171    625
36 SC ¹124
171    625
37SC ¹354

*Divorce—Cruel and barbarous treatment of husband by wife—Act of May 8, 1854.*

Under the act of May 8, 1854, P. L. 644, a divorce may be granted to a husband where his wife has by cruel and barbarous treatment of him rendered his condition intolerable or life burdensome, although such treatment may not have endangered his life.

*Divorce—Cruel and barbarous treatment by wife—Evidence—Question for jury.*

On the trial of a libel for divorce by a husband, where the libellant alleges cruel and barbarous treatment by his wife, it is incompetent to ask the husband what was the effect of his wife's treatment, so far as it related to his ability to attend to business. In such a case it is for the jury, and not for the libellant to say whether his condition was rendered intolerable, and his life burdensome by the treatment he received from his wife.

In determining whether there was cruel and barbarous treatment within the meaning of the statute the whole conduct of the wife towards her husband during the period of the alleged treatment should be considered, and evidence descriptive of it should be received.

Argued May 9, 1895. Appeal, No. 127, July T., 1894, by plaintiff, from judgment of C. P. McKean Co., Dec. T., 1891, No. 189, on verdict for defendant. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, and FELL, JJ. Reversed.

Libel for divorce for cruel and barbarous treatment. Before OLMSTED, P. J., and MORRISON, J.

When the libellant was on the stand he was asked this question :

Q. Now during this period from 1881 to 1886, and more particularly during the period immediately preceding your leaving home, what was the effect of this conduct upon you, so far as relating to your ability to attend to your ordinary business affairs ?

Objected to as incompetent, that he is not an expert and that it is for the jury to infer and not for the witness to interpret the cause of his condition ; that he can only state what took place.

The Court : Isn't that more a matter for the jury ? This is what the jury may find from the evidence already given; I don't think this is competent. Bill sealed for the libellant. [1]

When E. Frawley was on the stand libellant offered to prove acts of personal violence on the part of the respondent toward the libellant; the use of vile epithets and vile and abusive language towards him, and the continuous use by her towards him of abusive and opprobrious epithets, that she accused him of adultery and immoral practices, and that her uncontrollable and ungovernable temper led her to indulge constantly in scolding, fault-finding, abusive and vile language and vile epithets towards him in the presence of his family and neighbors.

The Court : As a whole proposition, we will have to exclude that, but some portions of it, I think, are competent. It seems to be well established in Pennsylvania that it must be such cruelty as endangers life, or seriously endangers health. The strongest case I find is the case of May v. May, in 62 Pennsylvania. As a whole proposition the offer is excluded. We will exclude this proposition as a proposition, and you can make such proposition as you think proper.

Bill sealed for the libellant. [2, 3]

The court charged in part as follows :

The course that we feel compelled under the law as we find it recorded in the books to take in this case renders it unnecessary that we should listen to any further argument upon it. The legal questions have been very thoroughly discussed, almost from the commencement of the action down to the present time. We have been compelled somewhat reluctantly to come to the conclusion in the case that the libellant cannot recover against the respondent a verdict in this case ; that the evidence is insufficient. Under our act of assembly, as it was passed in 1815, it was provided that "when any husband shall have by cruel and barbarous treatment, endangered his wife's life, or offered such indignities to her person as to render her condition intolerable and life burdensome, and thereby force her to withdraw from his house and family," she can obtain from him a divorce.

Now that act of assembly applied to the wife. It provided that "whenever the husband, by cruel and barbarous treatment shall endanger his wife's life, or shall offer such indignities to her person as to render her condition intolerable and life burdensome, and thereby force her to withdraw from his house and family," she was entitled to a divorce. But it made no provision whatever for the husband, by which he could obtain a divorce from his wife for any such cause. It applied simply to the wife.

The law stood in that situation until we come down to 1854, when the legislature saw fit to enlarge the jurisdiction of the court somewhat, and make it so it was possible for the husband to obtain a divorce from his wife on the ground of cruel and barbarous treatment. And that act of assembly—the part of it we think important—we will read : "Where the wife shall have by cruel and barbarous treatment, rendered the condition of her husband intolerable or life burdensome," etc. Now you will observe that the act of 1815 gives the wife the right to obtain a divorce wherever the husband shall have by cruel and barbarous treatment, endangered the wife's life, or offered such indignities to her person, as to render her condition intolerable and life burdensome, she might obtain a divorce, but when the legislature came to apply the remedy to the husband they

stopped short of saying that he should be entitled to obtain a divorce on account of indignities to the person. It simply gave him a right to a divorce where the wife by cruel and barbarous treatment, had rendered the condition of her husband intolerable or life burdensome. No matter how great the indignities she might offer to his person, he would not be entitled to a divorce.

[Now we have in this case an application on the part of Mr. Theodore N. Barnsdall, the libellant, against his wife, Mrs. Louisa A. Barnsdall, the respondent, for a divorce. It comes under the late act of 1854. He would be entitled to a divorce if the evidence showed that his wife had by cruel and barbarous treatment, endangered his life and thereby rendered his condition intolerable and life burdensome.] [14]

Now in the view we feel compelled to take of this case we don't think there is such evidence here of cruel and barbarous treatment on the part of the wife towards her husband as will justify us in submitting the question to the jury at all. . . .

[We don't think there is such evidence of cruel and barbarous treatment in this case as endangered the life, or was seriously calculated to endanger the life of the libellant, Mr. Barnsdall. The evidence falls short of that. There is some little testimony of violence in the case, but it was slight, very slight, and not such as to be very alarming, and not such as to endanger the life,] [15] and there are no threats whatever. A divorce might be granted on the ground of cruel and barbarous treatment, where it consisted mainly of threats, but they must be such threats as amount to the dignity of acts, and to seriously affect the health of the libellant, upon the ground that he is in serious danger, personal danger. No such threats as that were proved in this case, and indeed no threats whatever that I recollect of.

We don't think, therefore, that the evidence that this wife has been guilty of cruel and barbarous treatment to her husband, is of such a character as justifies us in submitting the question to the jury. I am reluctant to come to this conclusion. This is one of the very few cases that have come within my observation since I have had to do with the courts, where I have really felt that a separation by the parties was not only for their interest, but for the public interest.

Respondent's first point was as follows:

1895.]                           Points—Arguments.

BARNSDALL, Appellant, v. BARNSDALL.         629

1. That under all the evidence in the case, the verdict should be for the respondent. *Answer:* We affirm this point; and in the view we take of the case, it is unnecessary that we should make any formal answers to the points of the libellant, or the further points of the counsel for the respondent. Your verdict will be for the respondent. [8]

Libellant's points were as follows :

1. That occasional acts of violence accompanied by constant harsh and abusive language, charges of gross immorality and lewd practices, charging adultery in the presence of others, amounts to legal cruelty. Not answered. [9]

2. That it is not necessary that the conduct complained of should endanger either life or health, if the natural tendency of such conduct is to affect either or both, and effectually destroy his peace of mind. Not answered. [10]

3. That any course of conduct which will render life burdensome or his condition intolerable, in law amounts to cruelty. Not answered. [11]

4. That the jury may find for the libellant upon his unsupported testimony, even if contradicted by the respondent. Not answered. [12]

5. When a material fact is sworn to by a credible witness and uncontradicted, it may be taken by the jury as established. Not answered. [13]

Verdict and judgment for respondent. Libellant appealed.

*Errors assigned*, among others, were (1–3) rulings on evidence, quoting the bill of exceptions; (8–15) above instructions, quoting them.

*George A. Berry*, of *Berry & Edgett*, and *M. F. Elliott, Mullin & Mullin* with them, for appellant.—The contention of counsel for libellant is that the learned trial judge was led into the error of taking a too narrow view of the act of 1854. The rule governing both the admission of testimony and the final action of the court in directing a verdict for the respondent, adopted in this case seems to have been taken from Gordon v. Gordon, 48 Pa. 226, and May v. May, 62 Pa. 206, instead of the more liberal and later rule of Jones v. Jones, 66 Pa. 494.

It is not necessary that actual injury to life and health shall have taken place. It is enough if the treatment is such as would naturally tend to produce either of these effects: Butler v. Butler, 4 Pa. L. J. 388; Bishop on Marriage and Divorce, 717; Evans v. Evans, 1 Pl. 717; Bishop on Marriage and Divorce, pl. 719; Avery v. Avery, 5 Pac. Rep. 418; Baily v. Baily, 97 Mass. 373; 2 Wait's Actions, 563; Mayhew v. Mayhew, 8 Gray, 173; Lourne v. Lourne, 9 La. 452; Brown on Divorce, pl. 105; Brown on Divorce, pl. 103.

In the case at bar the respondent elected to have the issue tried by a jury. In doing this we think she changed the relation of the court to the case very materially. Her purpose in making her election was to avail herself of the supposed weakness of jurors, and by appealing to their sympathy or prejudice, overcome what might otherwise be a strong case against her and overcome in this way a case which would move a court to make a decree against her. If she had this advantage, then she must accept the risk of having the case determined against her on slight testimony.

If there was more than a scintilla of evidence, it should have been admitted to the jury: Gates v. Watt, 127 Pa. 20; Flattery v. Flattery, 88 Pa. 27.

In refusing to permit the libellant to testify as to the effect upon his health of the treatment he had received, a rule was established by the court which would make the refined, nervous, delicate, sensitive person bound to endure without injury to health the same course of treatment as the coarse, robust, sensual and brutal.

*R. B. Stone* and *P. R. Cotter*, for appellee.—The statute imperatively prescribes that the treatment must be "cruel and barbarous," whereby the libellant's condition is rendered intolerable or life burdensome. That is to say, it must be such treatment as tends to produce actual injury to life or health. Nothing short of this will suffice.

∴ Mere austerity of temper, petulance of manner, rudeness of language, even occasional sallies of passion, if they do not threaten bodily harm do not amount to legal cruelty: Evans v. Evans, 2 Hagg. 35; 4 Eng. Enc. 310; Eshbach v. Eshbach, 23 Pa. 343; 5 Am. & Eng. Ency. of Law, 793; Power's App.,

120 Pa. 320; Schlicter v. Schlicter, 10 Phila. 11; Harris's App., 2 W. N. C. 331; Miles v. Miles, 76 Pa. 357; Hardie v. Hardie, 162 Pa. 227.

OPINION BY MR. JUSTICE McCOLLUM, November 4, 1895:

The learned judge of the court below thought the libellant was not entitled to a divorce from his wife under the act of May 8, 1854, P. L. 644, unless he showed that her treatment of him endangered his life. While this was his view of the law governing the case he considered that the respondent had done all she could to render the condition of the libellant "miserable and wretched," and that it would be better for them and the public if they were divorced. In short the learned judge would have gladly submitted the case to the jury if he had believed the evidence was sufficient to carry it there, and he would have done so in the hope of a verdict that would have authorized a severance of the marital relation between the parties. These conclusions are drawn from the charge in which the reasons for a peremptory instruction to the jury to find for the respondent were clearly stated. While we do not question the soundness of his views respecting the conduct of the respondent we cannot concur in his construction of the statute under which the proceeding was instituted. This statute expressly authorizes the court of common pleas of the proper county to grant a divorce on the application of the husband where his wife has by cruel and barbarous treatment of him rendered his condition intolerable or life burdensome. The cruel and barbarous treatment mentioned in the statute includes acts which endanger life but it is not restricted to them. It is sufficient that the wife's treatment of her husband renders his condition intolerable and his life burdensome: Jones v. Jones, 66 Pa. 494, and Hildebron v. Hildebron, 158 Pa. 297. In the case before us the libel as amended conforms to the provisions of the statute under which the proceeding was instituted, and the material averments in it are flatly denied by the answer. The respondent desiring to have the issue thus formed tried by a jury it was so ordered by the court and a trial was had which resulted as above stated.

We do not deem it necessary to consider separately each specification which calls in question the rulings upon offers of

evidence.    These rulings appear to have been influenced by a construction which as we have already seen was erroneous.    We think it is clear that in cases of this character whatever directly tends to show a course of treatment which renders the condition of the libellant intolerable and his life burdensome is admissible.    We think too that in determining whether there was cruel and barbarous treatment within the meaning of the statute the whole conduct of the wife toward her husband during the period of the alleged ill treatment should be considered, and that evidence descriptive of it should be received.    Neither the court nor the jury can intelligently and justly dispose of the case without the assistance which such evidence affords.

We are not prepared to say that any error was committed in the ruling complained of in the first specification.    The rejected offer suggests a line of inquiry which might create distinctions and produce results not within the letter or spirit of the statute. Besides, we agree with the learned trial judge that it was for the jury and not for the libellant to say whether his condition was rendered intolerable and his life burdensome by the treatment he received from his wife.

To the extent that the rulings complained of are in conflict with the views herein expressed regarding the construction of the act of 1854 and the evidence relevant and material to the issue, the specifications are sustained.    Judgment reversed and venire facias de novo awarded.