## Fay *v.* Fay, Appellant.

*Divorce—Libel—Amendment—Cruel and barbarous treatment—Danger to life.*

An issue upon a libel by a husband against a wife for divorce which alleges that "the respondent, by cruel and barbarous treatment endangered the life of the libellant and offered such indignities to his person as to render his condition intolerable and life burdensome," may be amended at the trial after the evidence is all closed by omitting the words "endangered the life of the libellant," so as to make the issue read "had the respondent by cruel and barbarous treatment rendered the condition of her husband intolerable or his life burdensome." The power to allow such an amendment is within the sound discretion of the court, inasmuch as the issue as amended includes all that is required by statute to be alleged and proved in order to entitle the husband to a divorce a vinculo upon the ground of cruel and barbarous treatment, and the amendment did not introduce and compel the respondent to meet a new question which was not comprehended within the broader issue originally framed.

*Divorce—"Cruel and barbarous treatment"—"Indignities to the person"*—*Acts of March* 13, 1815, 6 *Sm. L.* 286, *May* 8, 1854, *P. L.* 644, *and June* 25, 1895, *P. L.* 308.

"Indignities to the person" and "cruel and barbarous treatment" are two distinct causes of divorce, and in the legislation upon the latter a distinction is made between the case where the wife, and the case where the husband, is the complaining party. In the former the language of the statute is: "when any husband shall have, by cruel and barbarous treatment, endangered his wife's life:" Act of March 13, 1815, 6 Sm. L. 286. In the latter the language is: "where the wife shall have, by cruel and barbarous treatment, rendered the condition of her husband intolerable or life burdensome:" Act of May 8, 1854, P. L. 644; Act of June 25, 1895, P. L. 308. This distinction has been recognized by the decisions as substantial.

The decisions in which it has been held or said that the cruel and bar-

barous treatment which will entitle a wife to a divorce must endanger life, do not apply to a libel filed by a husband.

The acts or conduct of a wife towards her husband that will entitle the latter to a divorce, must be not only such as render his condition intolerable and life burdensome, but such as amount to cruel and barbarous treatment. Both of these statutory elements must concur. If by other means which do not constitute legal cruelty his condition is rendered intolerable, this clause of the statute does not apply. Whatever directly tends to show a course of treatment which renders the condition of the husband intolerable and his life burdensome, is admissible in evidence, and in determining whether there was cruel and barbarous treatment within the meaning of the statute, the whole conduct of the wife toward her husband during the period of the alleged ill treatment should be considered.

On a libel by a husband against a wife for divorce on the ground of cruel and barbarous treatment there was testimony that the respondent neglected her children and her household duties; that at times she refused to prepare her husband's meals, that she frequently and persistently, and in the presence of their children, their neighbors and their visitors addressed him in profane, obscene and abusive language, and applied to him vile epithets; that she told him and declared to others that but for fear of the law she would poison him; that on two occasions she threatened to stab him with a knife she had in her hand, and that he prevented her from executing her threats; that she frequently cursed him in the most vehement manner; that she repeatedly expressed to him the wish that he was dead, that he would be killed in the dangerous occupation he was pursuing, that he would die the most horrible death that it was possible for any one to die; that she expressed the regret when he was injured, that he had not broken his neck. The libellant also testified that he feared that she would carry out her threats to poison him. *Held,* that the evidence was sufficient to sustain a decree in divorce.

While the appellate court will ordinarily on an appeal from a decree of divorce review the case de novo, this does not apply where the matters of fact involved have been decided by a jury in the court below. In such a case if the appellate court finds that there is sufficient evidence, although contradicted, to sustain the verdict of the jury, it will not reverse the decree.

*Divorce—Practice, C. P.—Reopening case.*

If a divorce suit by a husband against a wife has been tried by a jury, and there has been ample time to take depositions before final decree, the court will not, upon a mere ex parte affidavit by the wife alleging adultery, refuse to enter the final decree and reopen the case.

Argued Oct. 14, 1904.    Appeal, No. 10, Oct. T., 1904, by defendant, from decree of C. P. No. 1, Phila. Co., granting a divorce in case of Joseph Z. Fay v. Mary E. Fay.    Before RICE, P. J., BEAVER, SMITH, MORRISON and HENDERSON, JJ. Affirmed.

Libel for divorce.

330          FAY v. FAY, Appellant.

The facts are stated in the opinion of the Superior Court.

*Error assigned* was the decree of the court.

*James W. M. Newlin*, for appellant, cited: Eshbach v. Eshbach, 23 Pa. 343; Richards v. Richards, 37 Pa. 225; Gordon v. Gordon, 48 Pa. 226; May v. May, 62 Pa. 206; Detrick's App., 117 Pa. 452; Mason v. Mason, 131 Pa. 161; Hahn v. Bealor, 132 Pa. 242; Hardie v. Hardie, 162 Pa. 227; Harris's App., 2 W. N. C. 331; Krug v. Krug, 22 Pa. Superior Ct. 572; Rochelle v. Rochelle, 12 Pa. Dist. Rep. 297.

OPINION BY RICE, P. J., March 14, 1905:

The issue originally framed conformed to the allegations of the libel and read as follows: " At the time the libel was filed, had the respondent, by cruel and barbarous treatment, endangered the life of the libellant and offered such indignities to his person as to render his condition intolerable and life burdensome, and thereby forced him to withdraw from the respondent's house and family? " After the evidence was closed but before the judge charged the jury, it was amended upon the libellant's motion so as to read as follows: " At the time the libel was filed, had the respondent, by cruel and barbarous treatment, rendered the condition of her husband intolerable or his life burdensome ? " In support of the exception to this ruling and the assignment of error based thereon it is argued, that the respondent's case was prepared for trial on the theory of the libellant being required affirmatively to demonstrate all of the matters included in the original issue, and, therefore, it was prejudicial error to permit an amendment that relieved him from the burden of proving any of those matters, as, for example, that the cruel and barbarous treatment endangered the libellant's life. We appreciate the force of this argument, so far as it relates to the stage of the proceedings at which the amendment was made, but we are not convinced that it ought to prevail. As we construe the record as it stood prior thereto, the amendment did not introduce and compel the respondent to meet a new question which was not comprehended within the broader issue originally framed; nor did it make evidence for the libellant competent that would not have been so if the

amendment had not been made. And, whilst the affirmative of the issue, as amended, did not include all that was embraced in the original, yet it, as well as the libel, included all that is required by statute to be alleged and proved in order to entitle a husband to a divorce a vinculo upon the ground of cruel and barbarous treatment. If we are right in the foregoing conclusion as to the scope of the amendment, it cannot be successfully claimed that the respondent ought not to have been expected to come to the trial fully prepared to meet that issue, especially as a bill of particulars had been filed. Nor is it clear that, if she had pleaded surprise and had asked to have a juror withdrawn and the cause continued, in order that she might more fully prepare to meet the amended issue, the court would have been bound to grant her request. But, be that as it may, it does not appear that such request was made; therefore, as the case is presented to us, the question is, whether it is beyond the discretionary power of the court of common pleas to permit such an amendment to be made upon the trial of the cause, and even after the evidence was closed. We are clearly of opinion that the court has such power, and that the exercise of it is not ground for reversal, except where there is an abuse of discretion, which we think does not appear in the present case. In principle the case of Heilbron v. Heilbron, 158 Pa. 297, is closely analogous, and the cases of Grove's Appeal, 37 Pa. 443, and Melvin v. Melvin, 130 Pa. 6, are pertinent, although not controlling, precedents. We refer, also, to the remarks of Mr. Justice PAXSON in Powers's Appeal, 120 Pa. 320.

The third assignment alleges error in making absolute the rule for divorce, because there was no evidence that respondent had endangered the life of the libellant. In this connection we shall consider also, the question discussed by counsel as to the sufficiency of the evidence to sustain the affirmative of the issue.

It is important to notice that "indignities to the person" and "cruel and barbarous treatment" are two distinct causes of divorce, and that in the legislation upon the latter a distinction is made between the case where the wife, and the case where the husband, is the complaining party. In the former the language of the statute is : "when any husband shall have,

by cruel and barbarous treatment, endangered his wife's life: " Act of March 13, 1815, 6 Sm. L. 286. In the latter the language is : " where the wife shall have, by cruel and barbarous treatment, rendered the condition of her husband intolerable, or life burdensome: " Act of May 8, 1854, P. L. 644; Act of June 25, 1895, P. L. 308. This distinction has been recognized by the decisions as substantial. In Jones v. Jones, 66 Pa. 494, Justice AGNEW, after commenting on the suggestion of Justice STRONG in Gordon v. Gordon, 48 Pa. 226, upon that subject, said: "A careful consideration of the acts of 1815 or 1817, which in this part is a transcript of the former, and the act of 1854, will convince us that to limit the acts of cruelty and barbarous treatment in the act of 1854 to those that endanger life alone, is not consistent with its own language or the entire provisions of the acts of 1815 and 1817." This decision was followed in Barnsdall v. Barnsdall, 171 Pa. 625, where Justice McCOLLUM, speaking for the court, said : " This statute—" act of 1854—" expressly authorizes the court of common pleas of the proper county to grant a divorce on the application of the husband where his wife has by cruel and barbarous treatment of him rendered his condition intolerable or life burdensome. The cruel and barbarous treatment mentioned in the statute includes acts which endanger life but it is not restricted to them." The act of 1854 was amended in 1895 by adding indignities to the person of the husband as a cause for divorce, but without changing in the slighest degree the terms of the act as to cruel and barbarous treatment. This, in effect, was a legislative adoption of the judicial construction that previously had been given them. It is apparent, therefore, that those cases cited in appellant's brief, in which it has been held or said that the cruel and barbarous treatment which will entitle a wife to a divorce must endanger life, do not apply to a libel filed by a husband. It is not for us to show the reason for the distinction; it is enough to show that it was made by the legislature in the act of 1854, and deliberately retained in the act of 1895.

Nevertheless, the acts or conduct of the wife towards her husband, that will entitle the latter to a divorce under the clause of the statute now being considered, must be not only such as render his condition intolerable or life burdensome, but such

as amount to cruel and barbarous treatment. Both of these statutory elements must concur. If by other means, which do not constitute legal cruelty, this condition is rendered intolerable, this clause of the statute does not apply. In Butler v. Butler, 1 Parsons Select Equity Cases, 329, Judge KING arrived at this construction of the words "cruel and barbarous treatment" in the acts of 1815 and 1817: "That the cruelty within our statute which entitles a wife to a divorce from her husband, is actual or personal violence or the reasonable apprehension of it; or such a course of treatment as endangers her life or health, and renders cohabitation unsafe." See also McMahen v. McMahen, 186 Pa. 485. This definition has been held to apply to the same words in the act of 1854: Gordon v. Gordon, 48 Pa. 226; Jones v. Jones, 66 Pa. 494; Harris's Appeal, 2 W. N. C. 331. But it is equally clear, both upon principle and authority, that whatever directly tends to show a course of treatment which renders the condition of the libellant intolerable and his life burdensome is admissible in evidence, and that in determining whether there was cruel and barbarous treatment within the meaning of the statute the whole conduct of the wife toward her husband during the period of the alleged ill treatment should be considered: Barnsdall v. Barnsdall, 171 Pa. 625. Testimony that the respondent neglected her children and her household duties; that at times she refused to prepare her husband's meals; that she frequently and persistently, and in the presence of their children, their neighbors and their visitors, addressed him in profane, obscene and abusive language, and applied to him vile epithets, was unquestionably admissible and to be considered by the jury, even if not sufficient, of itself, to sustain a decree. But of a much more significant nature is the testimony that she told him, and declared to others, that but for fear of the law she would poison him; that on two occasions she threatened to stab him with a knife she had in her hand, and that he prevented her from executing her threats; that she frequently cursed him in the most vehement manner; that she repeatedly expressed to him the wish that he was dead, that he would be killed in the dangerous occupation he was pursuing, that he would die the most horrible death it is possible for anyone to die, and the regret, when he was injured, that he had not broken his neck; and that he feared she would

carry out her threats to poison him. Such testimony, we say, is of the most serious nature. It tends to show settled hatred and malice and a strong desire for the death of the person toward whom they were entertained, and to show, also, that he had ground for that "reasonable apprehension" of violence which is spoken of in the definition above quoted. Such conduct, habitually persisted in for a long period of time, is well calculated to render the condition of the aggrieved party intolerable. The testimony is pertinent also in another view. "Threats that are both serious and diabolical in their nature and produce alarm and dread are in themselves acts. They are not like mere words of reproach, or anger, or false imputation, but impress the mind with fear and tend directly to endanger health and may even imperil life:" Jones v. Jones, 66 Pa. 494.

In the foregoing recital in condensed form of some of the main features of the testimony of the libellant and his witnesses, we have not undertaken to state the facts but only what was testified to. The respondent denied many of the most serious allegations, and offset others by the allegation that her conduct was excusable under the circumstances because it was provoked by the equally bad, or worse, conduct of the libellant towards her. Indeed, if her version of their marital difficulties is the correct one, it would seem that he was the more culpable of the two. But this question was fairly submitted to the jury by the learned trial judge, and we remark in passing that no part of his charge is assigned for error. It is not for us to declare how the jury ought to have decided these conflicts of evidence in which the credibility of witnesses was so largely involved. We would be at a great disadvantage were we to attempt to revise the findings of the jury, approved by the trial judge, upon these disputed questions of fact; for they, by seeing the parties and the witnesses, hearing them testify and observing their demeanor, had much better opportunity than we have to form a correct judgment as to their credibility, and as to the probability of the charges that each of the parties made against the other. Nor does the law giving the right of appeal contemplate a review of the case de novo, where there has been a trial by jury. In Middleton v. Middleton, 187 Pa. 612, where the subject of the review of divorce cases on appeal was elaborately

considered, Justice DEAN said that the Supreme Court had, ever since the passage of the act of 1815, held it incumbent on it, "except where there has been an issue and jury trial," to review the testimony and adjudge whether it sustained the complaint of the libellant. In McClurg's Appeal, 66 Pa. 366, AGNEW, J., said that the only exception to the general rule, that the appeal is to be prosecuted de novo on the testimony taken in the cause, "is where a fact has been found by a jury trial according to the act, when this court will not retry the fact." The exception thus plainly recognized in the two cases cited was established in Andrews v. Andrews, 5 S. & R. 374, where the precise question was raised. We quote from the opinion: "Issue was joined upon matters of fact, and a verdict given for the defendant; whereupon the court decreed in favor of the defendant, and the husband appealed to this court. The act of March 13, 1815, under which the proceedings in this case were had, gives an appeal to this court, and directs that the appeal shall be prosecuted in the usual manner. We are of opinion that it has not been usual to retry in this court matters of fact which have been decided by a jury in the court below; and, therefore, we must take for granted that the finding of the jury was true." Therefore, it is enough for us to say that we have examined the whole body of evidence in the light of the general principles relative to this cause for divorce, heretofore alluded to, and, whilst it is conflicting in many important particulars, we are constrained to the conclusion that the testimony of the libellant and his witnesses, if believed by the jury, was sufficient to warrant them in finding the facts essential to a lawful dissolution of the marriage tie, at the suit of the husband, upon the ground set forth in the amended issue. Here our duty ends, so far as the evidence is concerned.

The fourth assignment alleges error in making absolute the rule for divorce after an answer to said rule charging after-discovered adultery of the libellant and demanding a trial by jury upon said charge. The acts which the respondent asserted that she witnessed, and from which she inferred, and, therefore, charged, that the respondent committed adultery, occurred November 29, 1903. This was seven months after the verdict was rendered and nearly two months before the rule for divorce was made absolute. It was alleged at bar by the appellee's

counsel that she took depositions attempting to prove this charge but did not file them. This, however, does not appear of record and we make no point of it. But it is apparent from ·the record that she had ample opportunity to take depositions and that none were filed. Therefore, when the rule for divorce came on for final hearing there was nothing before the court to support the charge but her ex parte affidavit, and this alone did not entitle her to demand that the case be reopened in order that the charge of adultery might be submitted to a jury. Moreover, if the doctrine of Ristine v. Ristine, 4 Rawle, 459, and Mendenhall v. Mendenhall, 12 Pa. Superior Ct. 290, is applicable to a suit in divorce based on cruel and barbarous treatment—and we see no good reason for holding otherwise—surely the libellant's adultery, committed after his right to a divorce had accrued, and after the proceedings instituted by him had reached the stage of a verdict in his favor, would not be cause for refusing the divorce.

All the assignments of error are overruled and the decree is affirmed.