## Yetter v. Yetter, Appellant.

*Husband and wife—Bill in equity for support—Act of May 23, 1907, P. L. 227.*

A bill in equity under the Act of May 23, 1907, P. L. 227, by a wife against her husband who had separated from her, to compel him to support herself and infant child, will be dismissed where the husband shows that he had separated from her because of her numerous acts of personal violence and unjustifiable cruelty and abuse, and also shows that he had made four offers in good faith to resume life with her, all of which she had refused, and renews such offers in apparent good faith at the trial, although at first declining to do so.

Argued Oct. 18, 1910. Appeal, No. 121, Oct. T., 1910, by defendant, from decree of C. P. Wyoming Co., Equity Book 3, p. 301, on bill in equity in case of Ann Henwood Yetter v. Alfred E. Yetter. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ. Reversed.

Bill in equity to compel a husband to support his wife. Before TERRY, P. J.

The facts are stated in the opinion of the Superior Court.

The court entered a decree directing the defendant to pay $400, and thereafter the sum of $50.00 per month.

*Error assigned* was the decree of the court.

*R. H. Holgate*, with him *Fred Ikeler*, and *John P. Kelly*, for appellant.—Separation is not desertion: Middleton v. Middleton, 187 Pa. 612; Chambers v. Chambers, 20 Pa. C. C. Rep. 41; Ingersoll v. Ingersoll, 49 Pa. 249; Bauder's App., 115 Pa. 480; Rosenberry v. Rosenberry, 180 Pa. 221; Whelan v. Whelan, 183 Pa. 293.

Reasonable cause which will justify either spouse in abandoning the other, is such as would entitle the party so abandoning to a divorce: Butler v. Butler, 1 Pars. 329; Doan v. Doan, 3 Clark, 7; Cattison v. Cattison, 22 Pa. 275; May v. May, 62 Pa. 206.

*W.. W. Watson* of *Watson, Diehl & Watson*, with him
*H. S. Harding*, for appellee.

OPINION BY ORLADY, J., March 3, 1911:

This record disclosed a condition of marital infelicity,
the real merits of which can be best determined by the
parties most affected by this action, but when they make
resort to a court of equity for its adjustment, the merits
of the case must be gauged by rules that have been made
to preserve rather than to sever marriage bonds.

The wife filed this bill under the Act of May 23, 1907,
P. L. 227, alleging that her husband, without reasonable
cause, had separated himself from her, and neglects and
refuses to provide suitable maintenance for her and their
infant child, and prayed that he be required to provide
and furnish suitable support, etc.  An answer was filed
in which the separation was admitted, but it was denied
that it was without reasonable cause, and that he was
obliged to separate himself and remove from the residence
of his wife on account of the cruel and barbarous treat-
ment which he had received at her hands, and which
rendered his condition intolerable and life burdensome,
etc.

The case was heard on bill, answer and proof before
the court, and a voluminous amount of evidence was
taken, represented by 175 pages of printed record, the
greater part of which is entirely irrelevant or is a repeti-
tion of facts that were not controverted.  The course of
the trial on both sides tended to make it difficult to effect
a reconciliation rather than to encourage such a conclusion.

At the time of their marriage, October 17, 1906, the
husband was aged twenty-nine years and the wife twenty-
one years.  He was a college, and she a normal school
graduate.  Soon after the marriage, controversies arose,
many of them in regard to trivial matters, but a recur-
rence of these and others of more importance culminated
in his withdrawing from their home on August 29, 1908,
and taking with him a baby boy who had been born on

October 19, 1907. The child was soon thereafter restored to the mother through habeas corpus proceedings, and was with her at the time of the hearing.

This act of assembly provides, that if any man shall separate himself from his wife without reasonable cause, and being of sufficient ability, shall neglect or refuse to provide suitable maintenance for his said wife, such wife shall be, and is hereby empowered to bring her action at law or in equity against such husband for maintenance, in the court of common pleas of the county where the desertion occurred, or where she is domiciled, and the said court shall have power to entertain a bill in equity in such action, and shall make and enforce such orders and decrees as the equities of the case demand.

The foundation of her right, is to show that the husband did not have reasonable cause to separate himself from her and their child, and that he had not made a good faith offer to again accept her as his wife in his home, and there maintain her. The controlling facts are not seriously in dispute. The actual separation had been preceded by a series of acts on the part of the wife, which are not challenged by her, and were so important a part of their everyday life that they may be considered as continuing and cumulative. She admits that she used profane language to him; grabbed him by the hair with both hands and pulled hard; struck him in the face a number of times; threw articles of table furnishings at him, a cake turner, a napkin ring, etc.; called him a damn fool; said she did not give a damn for him and frequently said that she hated him and would not live with him; was disagreeable to his friends when in his home, and other acts of similar gravity.

Two days prior to his leaving, while they were at table she threw at him a lot of knives, forks, spoons and table silver which barely missed the baby. On August 29, while the wife was away from the house, he wrote and left for her a letter stating: "This is to inform you that the end has come. I cannot and will not endure any

longer the life I have had for nearly two years. . . . I will look out for your support until you are in a position to support yourself, etc," and left the house with all the furniture remaining in it. The same day he wrote to his wife's father narrating his grievances against his wife and to each he stated "just how much is to be made public depends upon my wife." On the other hand, there is but very slight evidence of any impropriety on the part of the husband except that they differed in regard to marital relations and that on one occasion he slapped his wife with an open hand on the face at a time she knocked some medicine out of his hand when he was attempting to give it to their sick babe, and several times he retorted angrily to her when they disputed about household affairs. No gauge has yet been set by which the patience or endurance of a man or woman can be measured under such trying conditions. Each case must in some degree be determined by its own environment, but we doubt if there are many men who would patiently endure such persistent and continuous humiliation. Had this been an action for divorce the foregoing and other like testimony would have been sufficient to have justified the court in finding that he had reasonable cause for separating himself from his wife, and if a jury had resolved the facts in his favor we would have affirmed the judgment as being founded on sufficient evidence to dissolve the marital relation. We said in Russell v. Russell, 37 Pa. Superior Ct. 348, "it has always been the rule in Pennsylvania, that any unjustifiable conduct on the part of the husband or wife which so grievously wounds the mental feelings of the other, or so utterly destroys the peace of mind of the other as seriously to impair the bodily health or endanger the life of the other, or which destroys the legitimate ends and objects of matrimony constitute cruelty, although no physical or personal violence may be inflicted or even threatened or reasonably apprehended: May v. May, 62 Pa. 206; Jones v. Jones, 66 Pa. 494; McMahen v. McMahen, 186 Pa. 485; Howe v.

Howe, 16 Pa. Superior Ct. 193; Schulze v. Schulze, 33 Pa. Superior Ct. 325; Fay v. Fay, 27 Pa. Superior Ct. 328; Barnsdall v. Barnsdall, 171 Pa. 625.

But conceding that on that branch of the case the evidence may be insufficient to justify a divorce, on the other ground, whether he has in good faith requested his wife to return to him and resume their marital relations, there is in our minds no doubt. On September 24, 1908, the defendant addressed a letter to his wife, viz.: "Dear Anne, I have considered all our troubles and am sorry that things have been as they have. I feel that for all concerned we should again try to live together as man and wife are supposed to, and make the proper kind of a home for our boy and ourselves. I therefore ask you to come back to me as my wife, and I agree and ask you to agree, to make a good effort to forgive and try to forget all the past. I make this request sincerely, with the intention of doing all I can towards living happily together hereafter. I also feel that if we are again to live together, we should immediately decide to do so. Kindly give me an answer at an early date. This agreement upon condition that you willingly agree to the same efforts, etc. Yours most sincerely, Alfred." On September 26, she replied, declining the proffer for the reason that she "did not have perfect respect and confidence in him," and concluded "am sorry that I cannot give your desired definite answer"—signed, "Most sincerely, Anne." He again wrote on September 28, renewing his offer which, on September 30, she declined, stating, "we are both well and happy, so we had better stay here." She admits that he had offered several times to take her back and make a home for her and the child, which she as often refused. It is uncontradicted that in October, 1908, he advertised the household goods for sale at private sale; after selling a few articles the sale was adjourned, and the wife was requested to return. After another advertisement she was again requested, the night before the sale, to return and refused.

The court below say that before she could reasonably be required to repose confidence in her husband and intrust herself and child to him, it was incumbent upon him to make manifest his sincerity in asking a resumption of the marital relation, and bases his conclusion that the offer was not made in good faith, on account of an answer made by the defendant when examined in court, viz.:

"Q. Have you any affection now for your wife? A. At the time I asked her to return, I did have affection for her, and now as the mother of my child I do. There have been too many things happen after I made those offers for me to have the same affection I did once. When I married her I loved her with all my heart, I expected to have a happy life. I reasoned with her many times and tried to have her control her temper, etc. . . . she shook her fist in my face, called me a damn fool in the presence of her mother and the child, after that I thought it was up to her if she cared to come back." But a few sentences in advance of the above, he states, "When I asked her to come back I was perfectly sincere, I said I would do right. I would make a home for her and Boyd." And later he testified, and the case in the mind of the court, hinged on the following:

"Q. Do you now offer in good faith and because you love your wife, to take her back to you? A. At the present time I cannot, no. Not after what has transpired, and again while she a few moments ago said she would not return to me. She had declined to do so."

This examination was conducted under most harrowing conditions, but so far as words can indicate the intention and purpose of the witness, he endeavored to answer truthfully and fairly. Counsel were dealing with psychological processes that had nothing to do with the case, if he meant in good faith to receive his wife as such. That he did so intend is fairly shown by the following examination:

"Q. I think you said this morning you thought you were not prepared to live with your wife, did you? A.

Yes, I did. Q. Have you thought over the matter since? A. Yes, I have. Q. Why? A. Well it seems pretty hard to go right on the way this matter has been carried on in fighting, and be refused permission to enter the house and see the child, and again be without a home. It makes it quite lonely, and I am again willing in spite of what I have said, to give her another chance. Q. Are you willing to take this woman back and provide her a suitable place according to your station in life, and treat her with the respect due a wife? A. I am. Q. Do you make this offer in all sincerity and with the intention of carrying it out? A. Yes, sir. Q. And you will do so? A. Yes, to the best of my ability."

Thirty-eight pages of cross-examination by the plaintiff's counsel and the court follow this clear and explicit promise, and not a question is asked the defendant as to his good faith in making it. It is hard for us to understand what further was expected of him, or how he could have couched a good faith promise in more pertinent terms. True we did not see the witness, but this oral testimony is in exact conformity with his written offers. In all the writings of the wife and in her examination in court there is not an intimation on her part of her willingness to return. This proceeding is in equity; every essential averment in the bill is specifically denied in the answer and proof, and in a large measure, the causes for his leaving the home, and her refusal to return to it are admitted by the wife.

The court could have put the defendant to the test of his good faith by continuing the case for a reasonable time, but this was not done. The defendant promptly attempted a reconciliation with his wife. There was nothing inconsistent in his attitude toward her. He tried to save the home furniture and sold it only after the wife had four times refused to return to him. He was not shown to be of evil or dissolute habits or that he was actuated by any other than a proper motive in resuming his home relation with his wife and baby. He was en-

gaged in honorable employment at fair wages and could readily perform his undertaking, and so far as this record shows he was entitled to have his promise made under oath taken at its face value.  How else could he make manifest his sincerity and good faith?  Being the plaintiff in such a proceeding, equity expects of her that she shall at least meet her husband halfway.  This she has persistently refused to do, and is not entitled to the relief furnished by the act under which she has proceeded.

The decree is reversed, and the bill is dismissed.