# Schulze *v.* Schulze, Appellant.

*Divorce—Cruel and barbarous treatment—Libel by husband.*

Whatever directly tends to show a course of treatment which rendered the condition of the husband intolerable and his life burdensome, is admissible in evidence, and in determining whether there was cruel and barbarous treatment within the meaning of the statute, the whole conduct of the wife towards her husband during the period of the alleged ill treatment should be considered.

Bad temper alone is not ground for divorce, nor is mere drunkenness, or indolence, or thriftlessness, or willful neglect of household duties. The acts or conduct of the wife towards her husband that will entitle the latter to a divorce for cruel and barbarous treatment, must be not only such as render his condition intolerable or life burdensome, but such as amount to cruel and barbarous treatment. Both of these statutory elements must concur. If by other means, which do not constitute legal cruelty, his condition is rendered intolerable, the statute does not apply.

A husband will not be allowed a divorce on the ground of cruel and barbarous treatment by his wife merely because the wife was peevish,

fault-finding, ill-tempered, and neglectful of the tidiness of her children and household, occasionally intoxicated, and at times neglectful of the preparation of meals.

*Divorce—Practice, C. P.—Appeals—Review of evidence.*

Although the report of an examiner in favor of a divorce is approved by the lower court, this will not relieve the appellate court of the duty of reviewing the testimony, and adjudging whether it sustains the complaint of the libelant.

Argued Dec. 5, 1906. Appeal, No. 155, Oct. T., 1906, by defendant, from decree of C. P. Schuylkill Co., March T., 1906, No. 193, awarding a divorce in case of Otto H. Schulze v. Katie Schulze. Before RICE, P. J., PORTER, HENDERSON, MORRISON, HEAD and BEAVER, JJ. Reversed.

Libel for divorce.

The facts are stated in the opinion of the Superior Court.

*Error assigned* was decree awarding divorce.

*E. P. Leuschner,* for appellant.—The evidence does not justify a decree : Richards v. Richards, 37 Pa. 225 ; Gordon v. Gordon, 48 Pa. 226 ; May v. May, 62 Pa. 206 ; Roth v. Roth, 15 Pa. Superior Ct. 192 ; Mendenhall v. Mendenhall, 12 Pa. Superior Ct. 290 ; Harris's App., 2 W. N. C. 331 ; Eshbach v. Eshbach, 23 Pa. 343 ; Mason v. Mason, 131 Pa. 161 ; Van Dyke v. Van Dyke, 135 Pa. 459 ; Nye's App., 126 Pa. 341 ; Rochelle v. Rochelle, 28 Pa. C. C. Rep. 458 ; Ottenberg v. Ottenberg, 32 Pa. C. C. Rep. 208 ; Riester v. Riester, 11 Pa. Dist. Rep. 99 ; Hampson v. Hampson, 15 Pa. Dist. Rep. 348.

*A. D. Knittle,* with him *I. A. Reed,* for appellee.—The cruel and barbarous treatment mentioned in the statute include acts which endanger life, but it is not restricted to them : Fay v. Fay, 27 Pa. Superior Ct. 328 ; Butler v. Butler, 1 Parsons' Select Eq. Cases, 329 ; Gordon v. Gordon, 48 Pa. 226 ; Barnsdall v. Barnsdall, 171 Pa. 625 ; Heilbron v. Heilbron, 158 Pa. 297 ; McMahen v. McMahen, 186 Pa. 485.

OPINION BY RICE, P. J., April 15, 1907 :

This is an appeal from a decree of divorce a vinculo matrimonii. The cause alleged in the libel is cruel and barbarous

treatment. The general averment thereof is in the words of the Act of May 8, 1854, P. L. 644, and is followed by specific allegations which the master correctly summarizes as follows: "This treatment, it is alleged in the libel, consisted of threats of personal violence, hurling missiles at the libelant, demolition of household goods, refusal to prepare meals, neglect of the children and household duties, calling him vile and opprobrious names, refusal of admission to the house, and frequent intoxication." It is clear, both upon principle and authority, that whatever directly tends to show a course of treatment which rendered the condition of libelant intolerable and his life burdensome, is admissible in evidence, and that in determining whether there was cruel and barbarous treatment within the meaning of the statute the whole conduct of the wife toward her husband during the period of the alleged illtreatment should be considered: Barnsdall v. Barnsdall, 171 Pa. 625; Fay v. Fay, 27 Pa. Superior Ct. 328. It is important, therefore, to determine how far these several allegations of the libel are established by the testimony, even though proof of neither one of them, taken by itself, would be sufficient to support the general charge. Before doing so, it is appropriate to refer briefly to the general principles governing an application for divorce based upon the allegation of cruel and barbarous treatment, in which the husband is libelant. It is true that the charge may be made out without proof of actual violence inflicted upon his person, either endangering life or of a less serious character. But it is equally well settled that, while proof of these acts is admissible in support of the charge, bad temper alone is not ground for divorce, nor is mere drunkenness, or indolence, or thriftlessness, or willful neglect of household duties. The acts or conduct of the wife towards her husband, that will entitle the latter to a divorce under the clause of the statute now being considered, must be not only such as render his condition intolerable or life burdensome, but such as amount to cruel and barbarous treatment. Both of these statutory elements must concur. If by other means, which do not constitute legal cruelty, his condition is rendered intolerable, this clause of the statute does not apply. In Butler v. Butler, 1 Parsons' Select Equity Cases, 329, Judge KING, after an elaborate review of many decisions, arrived at this construction of

the words cruel and barbarous treatment in the acts of 1815 and 1817 : " That the cruelty within our statute which entitles a wife to a divorce from her husband, is actual personal violence or the reasonable apprehension of it ; or such a course of treatment as endangers her life or health, and renders cohabitation unsafe." This definition has been accepted in numerous cases, many of which are cited in McMahen v. McMahen, 186 Pa. 485, and has been held to apply to the same words in the act of 1854 : Gordon v. Gordon, 48 Pa. 226 ; Jones v. Jones, 66 Pa. 494 ; Harris's Appeal, 2 W. N. C. 331 ; Fay v. Fay, 27 Pa. Superior Ct. 328. In determining whether the evidence warrants a finding of facts which would bring the case within the well-settled rule above stated, we are at the disadvantage of not having the witnesses before us so that we can observe their manner of testifying and apply the tests of credibility which such opportunity affords. But the learned court below was under the same disadvantage, and it is well settled by the authorities, that although the report of an examiner in favor of the divorce is approved by the court, this will not relieve the appellate court of the duty of reviewing the testimony and adjudging whether it sustains the complaint of the libelant: Middleton v. Middleton, 187 Pa. 612.

The preponderance of testimony supports the allegation that for a period of two years, or thereabouts, prior to the institution of this proceeding, the respondent was addicted to the use of intoxicating liquors ; that upon several occasions she carried it to excess, and upon two or three occasions became grossly intoxicated.

The allegation that she was neglectful of her children (a boy aged about three years and a girl aged about sixteen months, at the institution of this proceeding) is sustained by the preponderance of testimony so far as the allegation relates to their bodily cleanliness and the cleanliness of their apparel; but a finding that she illtreated them otherwise, or was lacking in affection for them, is not warranted upon a fair consideration of all the evidence. Indeed, some of the testimony as to her peevish and quarrelsome acts shows that some of the conduct of which complaint is made grew out of the respondent's oversolicitude about the health of her infant child.

The fact that for a year, perhaps two years, before the in-

stitution of the suit she was neglectful of some of her household duties, in consequence of which the home presented an untidy appearance, seems also to be established; but in the consideration of this fact it must be borne in mind that during a considerable part of the period she was not in good health, that at times she was without a servant, and at times required the attendance of a physician and the care of a nurse.

As to refusal to prepare meals for the libelant, the testimony of the parties is conflicting, he alleging it and she denying it; but the testimony of a servant, who lived with them for about seven weeks immediately preceding the institution of the suit, is so far corroborative of the libelant's testimony as to warrant a finding that during the latter half of the period, in reply to his inquiries at breakfast whether she would have dinner for him when he came home, she would answer no, and that " he did not need to come home for his supper, for there would not be any." It does not clearly appear in the testimony of this witness how often this occurred during the short period above referred to, and it is worthy of note .that neither the nurse, who on two or three occasions had attended upon the respondent, nor any of the former servants, testified to her refusal to prepare meals or to have them prepared during the time they were employed. The testimony, taken as a whole, while sustaining the allegation that she did so refuse on occasion, does not clearly and satisfactorily show persistent and continued neglect of marital duty in this particular.

The testimony of disinterested witnesses fairly warrants the conclusion that the respondent scolded and found fault with the libelant frequently; that her " language was quarrelsome and nagging," as one of the witnesses described it; that at times she had fits of temper in which she addressed him in violent and abusive language, and applied to him opprobrious epithets. It is to be observed, however, that in some of the instances referred to by these witnesses her scolding and quarrelsome conduct is explained, if not wholly excused, by the fact that she was suffering from a nervous disorder attendant upon menstrual sickness, and in other instances by the nervous condition she was in about the time of her confinement. In other instances it is explained, but not excused, by the fact that she was under the influence of intoxicating liquor. It is to be observed further

that the testimony of some of these witnesses tends to show that the angry and abusive conduct was not all on one side. One of the neighbors, called as a witness by the libelant, admitted that he heard the libelant's voice too in an angry tone, sometimes in reply to her and sometimes not. Another witness, a servant whose other testimony shows that she was not biased in favor of the respondent, when asked whether she had ever seen the libelant strike the repondent, testified as follows: " I won't say strike her, but they had a quarreling match there one night, when he pushed her and she went up pretty hard against the back door, and the panel of the door broke by her coming up against it. Q. Did you see any marks on her face? A. Yes, both her eyes were black." Being questioned further about this occurrence the witness testified : " A. No, I cannot say I saw him strike her, because when they started to fight they went in the dining room ; I got excited and I left. Q. Immediately after you came out you saw Mrs. Schulze with two black eyes? A. No, not until the day after her eyes got black. Q. They got black the day after? A. Yes, sir. Q. Did you see anything wrong with her eyes after ; did you take notice to anything being wrong with her eyes after the quarrel? A. No, I did not, only that they were black, that is all." It will not be out of place to refer also in this connection to the testimony of the libelant himself as to this subject of personal violence inflicted upon her. Being asked whether he ever struck or beat his wife, he testified : " No, I did not strike her; I have pushed her out of my road, when she would get in my road ; when I would come downstairs, she would follow me and I would go upstairs, and she would be this close at my heels, perhaps a foot, and I would push her out of the road, and if she would strike on the couch she would lie there and scream at the top of her voice for five minutes. I held her mouth shut so that she could not make so much noise." There is a manifest and very substantial difference between a course of conduct consisting of false, malicious, abusive, humiliating and insulting accusations persistently, continuously, and without provocation addressed by the respondent to the libelant, and the scolding and fault-finding attributable to irritability caused by disease or nervous disorder, and between conduct of the former kind and angry altercations in which both participate.

Upon a full view of all of the evidence we are unable to conclude that it clearly and satisfactorily shows such a continued course of conduct as we at first described, although we think it does show, that at times, the respondent was peevish, inexcusably fault-finding and ill-tempered.

There is no evidence that she ever inflicted physical violence upon the libelant, while the evidence does show that he inflicted such violence upon her upon the occasions above referred to; and if the respondent is to be believed, these were not the only instances.  No witness other than the libelant testifies that she ever threatened him by word or act with personal violence, except as about to be stated.  The nurse, who attended upon her at and after her confinement in the fall of 1894, testified that she saw nothing particularly wrong during the period of nineteen days that she was there until the day before she left.  A dispute then arose between them as to the treatment of their boy, then less than two years old.  The child cried because he wanted to sleep with his mother, and the father—properly, no doubt—would not permit it.  This angered her, and in the course of the dispute she picked a cup to throw at her husband, but was prevented by the nurse. The testimony as to her subsequent conduct the same night bears out what we have said with regard to her nervous disorder rather than aggravates the act charged against her.  The respondent testified as to another occasion as follows:  "I fired two small cups down the steps at him one night; he made me so angry for the way, the names he called me, and accusing me of going around with men, which I have never done, and he was coming up after me and I fired them down."

With these two exceptions, the allegation that the respondent made threats of personal violence against the libelant depends entirely upon his testimony, that on one occasion she said "if she was a man she would kill me and hang for me;" that on another occasion, evidently after these proceedings were instituted, she said "if I would not stop them she would get George Stephenson to lick me;" that when the libelant threatened her with this suit she answered that before she would get through with him he would not have any store or anything else; and that once, after a quarrel, she called after him, "You scoundrel, I will fix you."  The foregoing is a fair

summary of the libelant's testimony as to threats uttered by the respondent. We have no disposition to belittle these allegations, but the comment that is obviously suggested is that the first was not a positive threat; that the second was after the libel was filed; that the third does not fairly bear the construction that she intended to break up his business ; and the fourth does not necessarily imply a threat to do bodily harm. But before the question whether the alleged utterances were such as to create a reasonable apprehension of personal violence, and constitute legal cruelty, need be considered, it must be found as a fact that the respondent made them. She not only denies having made them, or any other threat to do him bodily harm, but makes the counter charge that he threatened to kill her and brought home a revolver for that purpose. Applying all the tests of credibility which may be applied in the consideration of the conflicting testimony of two witnesses, who are equally interested in the result, we cannot say that the testimony of the libelant as to this particular allegation of the libel is entitled to greater credit than that of the respondent. We are therefore compelled to conclude that the allegation of threats of personal violence is not established by the preponderance of testimony, except as stated in the immediately preceding paragraph of this opinion.

The libelant testifies that in consequence of her conduct he is a " physical wreck." This assertion depends upon his testimony alone ; no physician was called to testify as to his condition of health or to express an opinion as to his nervous condition. It is to be noticed further that the parties lived in the same house, and more or less frequently slept in the same bed, down to the time of the filing of the libel, and continued to live in the same house for some time afterward. This tends, in some degree at least, to dispel belief that he had a reasonable apprehension of personal violence or was subjected to such treatment as endangered his life or health and rendered cohabitation unsafe.

Without discussing the evidence as to the specific allegations of the libel in greater detail, we remark generally, in conclusion, that if all of the testimony of the libelant is to be accepted as verity, and all of the testimony of the respondent in conflict therewith is to be rejected as unworthy of belief, it would be

stating the case mildly to say that her course of conduct was such as to render his condition intolerable and life burdensome. On the other hand, if her testimony (very little of which has been specifically referred to in the foregoing discussion) is to be credited as a whole and his rejected, she is the aggrieved party and he by far the more culpable of the two. It is impossible to determine on which side of the unhappy controversy the whole truth lies; probably on neither. But upon a view of all the relevant facts that are established by the preponderance of the credible testimony, we are constrained to hold that, while the respondent is not by any means free from blame for the deplorable condition that exists between these parties, the charge of cruel and barbarous treatment is not satisfactorily proved. Therefore the first two assignments of error are sustained. This conclusion renders it unnecessary to discuss the other assignments.

The decree is reversed and the libel dismissed at the costs of the appellee.