## Kehler v. Kehler.

*Divorce—Cruel and barbarous treatment by wife—Act of June 25, 1895.*

1. Under the Act of June 25, 1895, P. L. 308, unless a wife's treatment or indignity renders the condition of her husband intolerable or life burdensome, he is not entitled to a decree in divorce.

2. The continued neglect by a wife of her housekeeping duties and the proper care of her husband and children, and frequent absence from home, are not such indignities to the person of the husband as will entitle him to a divorce.

3. In granting a divorce to a husband on the ground of cruel and barbarous treatment and indignities to his person, the evidence should be very clear and unambiguous.

4. Where a wife leaves her husband on two occasions and he twice goes to her and brings her back, he cannot allege that, prior to such occasions, she rendered his condition intolerable and his life burdensome.

5. After the wife leaves her husband, he cannot complain of cruel and barbarous treatment because, immediately before leaving, she had threatened his life.

Motion in arrest of judgment and for a new trial. C. P. Schuylkill Co., March T., 1926, No. 13.

*L. E. Enterline*, for plaintiff.

*W. G. Treibley* and *W. C. Devitt*, for defendant.

KOCH, J., Nov. 8, 1926.—The grounds of divorce set forth in the libel are cruel and barbarous treatment and indignities to the person of the libellant, and the parties agreed upon the following issue to be tried by a jury: "Did Mima Kehler, respondent, by cruel and barbarous treatment and indignities to his person, render Samuel Kehler, libellant's condition intolerable and his life burdensome, by continued and repeated abuses during the periods of their cohabitation, said treatment and indignities consisting of threats and attempts of violence against libellant and members of his household and family, and the use of vile and obscene language to and concerning libellant and members of his family in presence of libellant and other members of his family, with neglect of wifely duties, as well as continuous and repeated acts tending to belittle and humiliate libellant, persistent nagging and fault-finding?"

A husband is entitled to a divorce "where a wife shall have by cruel and barbarous treatment, or indignities to his person, rendered the condition of her husband intolerable or life burdensome:" Act of June 25, 1895, P. L. 308.

The verdict of the jury is in favor of the libellant. Such a verdict establishes the facts, if there be competent evidence: Shaw *v.* Shaw, 36 Pa. Superior Ct. 122, and "our only inquiry is whether the case should have been submitted to the jury on the evidence offered by the libellant:" Shaw *v.* Shaw, 36 Pa. Superior Ct. 122, 123. We must take it for granted that the finding of the jury is correct: Fay *v.* Fay, 27 Pa. Superior Ct. 328.

Kehler *v.* Kehler.

One of the grounds upon which the respondent asks for a new trial is that the verdict is against the law and the evidence. The verdict may be taken as establishing the following facts:

The libellant is fifty years old, married the respondent in 1921, and has three sons by a former wife, the youngest of whom, a boy of fourteen years, is sickly. In 1920 the libellant's barn and its contents were destroyed by fire, resulting in a net loss of about $16,800. The respondent has four children by a former husband, two of whom lived with the mother and stepfather for some time. Libellant cautioned the respondent respecting his financial condition and the necessity for thrift in the household. He kept money in a drawer convenient for household purposes, but his wife bought more than she had money to pay for, and the husband made her return such articles; he objected to her buying on credit, and then discontinued the practice of keeping money in the drawer. After that his wife took money from his pockets at night when he was in bed, and he "missed money right along." So he accused her of stealing. She swore at him often in the presence of others, calling him a crooked or bow-legged s. of a b., and, for weeks at a time, they would not talk to each other; she was unreasonable. At times she would not prepare the meals. On one occasion the sickly boy had pneumonia and, excepting once, she refused to give him any attention for a period of three weeks. She refused to make chicken broth for him when asked to do so, and said if her daughter made it she would throw it out. On another occasion, when half a dozen people were entertained as company at the libellant's house, the respondent, on passing the bread at the dinner table, purposely omitted her husband; nor would she talk to him; she was not then on speaking terms with him.

One of the respondent's daughters lived with the family and combed her hair and arranged her toilet in the bedroom of the husband and wife, where there was a bureau with a large mirror, and the husband complained of the loose hair and powder that the daughter left on the bureau. He objected to her using that bedroom for such purposes. So the wife moved the bureau and mirror into another room for her daughter's use, but the husband insisted on moving it back. Thereupon the wife became enraged, got a poker and smashed the mirror. On this occasion she threatened to knock out her husband's brains with the poker which she used in smashing the mirror. He defended himself with a chair, smashing it when she struck at him with the poker. She then left, but, after several months, the husband brought her back again.

On another occasion, when the sickly boy came down to breakfast and his father told her to get the boy an egg, she refused and told the boy to get his breakfast at the neighbor's where he had gotten a meal the previous day. The boy accused her of stealing and she called him a liar, a thief and an ugly s. of a b., and made an attack on him, saying she would cut off his neck with a butcher knife. She took hold of the boy and had him down on the floor, and, when the father pulled her off the boy, she grabbed a butcher knife and threatened to stab the father, but he went out on the porch. After that altercation she threw the butcher knife on the table and got ready and went away and said if her husband followed her again she would shoot him. She did not return any more to the home of her husband. She left her husband three times after such quarrels, the last time being in August, 1925, after she had threatened to cut off the boy's neck and to stab her husband. Then the husband prosecuted his wife for assault and battery with intent to kill. A hearing was had before a justice of the peace and the case was returned

Kehler *v.* Kehler.

to court, but was subsequently *nol prossed.* After she left her home the first time and the second time the husband brought her back. During her cohabitation with the libellant two of his boys left home on account of his wife's conduct toward them. Since leaving her husband the last time the wife prosecuted her husband for non-support and obtained an order of the court for her support.

On some occasions when the libellant went away from home on business everything was all right, but when he returned his wife would not talk to him. She refused to mend his clothes and told him to do it himself. She always started the quarrels. She first left about a year after they were married and the second time she left was a year or two after that; the first time she was gone a few days and the second time she was gone a few months. She fought with his children and made it miserable for two of them so they could not be at home. His wife's conduct affected his health and it is impossible to live with her; he did everything he could, financially and otherwise. She had kept house for him about a year before they were married. She always left him of her own accord. On one occasion she told him to kiss her behind. When he asked his wife why they had moved the bureau into the girl's room she said it was for spite. He never started the first word of the quarrels. Many times when he came home from market the little boy cried and said she had called him a s. of a b. The husband cried when the wife refused to get the boy an egg. Once he cursed his wife and she forgave him. He did not call her names. She said the boy was a hateful, stealing s. of a b. and said to the boy that his father was a hateful s. of a b. and "that if he only went over the bank and did not come home." The husband had been to market that day. She called him a bow-legged s. of a b. in the presence of her children and of his own children.

Unless a wife's treatment or indignity renders the condition of the libellant intolerable or life burdensome, the libellant is not entitled to a decree in divorce. "Never should divorces be easily obtained, for marriage is the most sacred of human relations, and should never be dissolved without clear proof of imperious reasons:" Richards *v.* Richards, 37 Pa. 225, 228. "The law does not permit a divorce for any single act of violence or abuse, however vulgar, rude, harsh or unchivalrous, but requires proof of such a course of conduct, or continued treatment, as to render the libellant's condition intolerable and life burdensome:" Richards *v.* Richards, 37 Pa. 225, 228.

The continued neglect by a wife of her housekeeping duties, and the proper care of her husband and children and frequent absence from home on evenings and even for several days at a time at religious meetings, are not such indignities to the person of the husband as will entitle him to a divorce: Johnson *v.* Johnson, 31 Pa. Superior Ct. 53.

"It is clear, both upon principle and authority, that whatever tends directly to show a course of treatment to render the condition of the libellant intolerable and his life burdensome, is admissible in evidence, and that, in determining whether there was cruel and barbarous treatment within the meaning of the statute, the whole conduct of the wife toward her husband during the period of the alleged ill-treatment should be considered: Barnsdall *v.* Barnsdall, 171 Pa. 625; Fay *v.* Fay, 27 Pa. Superior Ct. 328:" Schulze *v.* Schulze, 33 Pa. Superior Ct. 325, 327.

"Bad temper alone is not a ground for divorce, nor is mere drunkenness, or indolence, or thriftlessness, or wilful neglect of household duties. The acts or conduct toward her husband that will entitle the latter to a divorce under the clause of the statute now being considered must not only be such

as to render his condition intolerable or life burdensome, but such as amount to cruel and barbarous treatment. Both of these statutory elements must concur. If by other means, which do not constitute legal cruelty, his condition is rendered intolerable, this clause of the statute does not apply:" Schulze v. Schulze, 33 Pa. Superior Ct. 325, 327. "The cruelty within our statute which entitles a wife to a divorce from her husband is actual personal violence or the reasonable apprehension of it, or such a course of treatment as endangers her life or health and renders cohabitation unsafe. This definition has been accepted in numerous cases, many of which are cited in McMahen v. McMahen, 186 Pa. 485, and has been held to apply to the same words in the Act of May 8, 1854, P. L. 644; Gordon v. Gordon, 48 Pa. 226; Jones v. Jones, 66 Pa. 494; Harris's Appeal, 2 W. N. C. 331; Fay v. Fay, 27 Pa. Superior Ct. 328:" Schulze v. Schulze, 33 Pa. Superior Ct. 325, 328.

The testimony should show persistent and continued neglect of marital duties: Schulze v. Schulze, 33 Pa. Superior Ct. 325, 329. A husband will not be allowed a divorce on the ground of cruel and barbarous treatment by his wife merely because the wife is peevish, fault-finding, ill-tempered and neglectful of tidiness of her children and household, occasionally intemperate and neglectful of the preparation of meals: Schulze v. Schulze, 33 Pa. Superior Ct. 325. "It is to be borne in mind that the actual conduct of a wife toward her husband that will entitle the latter to a divorce upon the ground of cruel and barbarous treatment must be not only such as renders his condition intolerable, or life burdensome, but such as amounts to legal cruelty:" Platt v. Platt, 38 Pa. Superior Ct. 551, 552. "In granting a divorce on the ground of cruel and barbarous treatment and indignities to the person, evidence should be very clear and unambiguous:" Forrester v. Forrester, 77 Pa. Superior Ct. 364, 367. "A marriage should never be dissolved without clear proof of imperious reasons: Hexamer v. Hexamer, 42 Pa. Superior Ct. 226; Ponthus v. Ponthus, 66 Pa. Superior Ct. 257; Lacock v. Lacock, 74 Pa. Superior Ct. 378; Biddle v. Biddle, 50 Pa. Superior Ct. 30; Wark v. Wark, 73 Pa. Superior Ct. 274:" Forrester v. Forrester, 77 Pa. Superior Ct. 364, 367. There must be a course of conduct to justify a divorce upon the ground of cruel and barbarous treatment, or of indignities to the person, and such a course has not been shown by the evidence in the case before us.

The libellant cannot claim that his wife's course of treatment before she left his house the first time, or the second time, rendered his condition intolerable, or his life burdensome, because he went and brought her back. And when she left the third time, she left because of the quarrel at the breakfast table when she threatened to cut off the boy's neck and to stab her husband. Her leaving him then could certainly not render his condition intolerable and life burdensome. Only her presence with cruel and barbarous treatment of him or indignities to his person, and not her absence, could render his condition intolerable and life burdensome. My reading of many cases where the husband sought to obtain a divorce from his wife upon the grounds set forth in this case persuade me that the facts in this case do not measure up to the standards of bad conduct on the part of the wife indicated in the cases where divorces were granted. A course of cruelty is not established here, nor are such indignities to the person shown as ought to render one's condition intolerable or life burdensome. Nor is a single cruel and barbarous act of such atrocity shown in this case as would of itself justify a decree of divorce.

The knife incident was explained by the respondent when on the witness stand. She said that when the boy accused her of stealing pickles, "I said if

Kehler *v.* Kehler.

you say that again I will give you a slap, and of course I did give him a slap. . . . I gave him two or three slaps." Then they got on the floor and the libellant had her by the neck and hair with her nose down on the floor, and "he made an attempt as if he was going to hit me, and I said, 'don't you hit me or I will stab you with this knife,' and I grabbed the knife. It was on the table and I grabbed it to defend myself if he would hit me." She admits that she cursed him, but says he cursed her also by calling her a s. of a b. many times. She said his children were jealous and that her husband believed everything they said. If the jury believed her story, the case is far from being one-sided.

In charging the jury, the respondent's second point that, "Under all the evidence in the case, the verdict of the jury should be for the respondent" should have been affirmed. But we have no motion before us for judgment *non obstante veredicto*. We will, therefore, grant the motion that is before us. Refusal to charge as requested is also assigned in support of this motion.

Judgment is arrested and a new trial is granted.

From M. M. Burke, Shenandoah, Pa.