# Merrick, Appellant, *v.* Merrick.

*Divorce—Desertion—Indignities to person—Question for jury.*

1. Desertion is an actual abandonment of matrimonial cohabitation with an intent to desert willfully and maliciously persisted in without cause for two years.

2. Where a husband withdraws from the presence and society of his wife, introduces into his household his father and mother, takes control of the house from the wife, forces her to live in separate apartments not properly heated, and so conducts himself as to lead to the inference that he was making life uncomfortable for her in order that she might be induced to leave, and the wife leaves the house under such circumstances as to show that she had no intention of deserting her husband, the question as to whether there was a desertion by the wife is a question

14 MERRICK, Appellant, v. MERRICK.

for the jury in a divorce proceeding instituted by the husband, and a verdict and judgment for the wife in such proceeding will not be reversed.

Argued Nov. 17, 1909. Appeal, No. 213, Oct. T., 1909, by plaintiff, from judgment of C. P. Chester Co., Jan. T., 1908, No. 57, on verdict for defendant in case of Richard Merrick, Jr., v. Lydia E. Merrick. Before RICE, P. J., HENDERSON, MORRISON, HEAD, BEAVER and PORTER, JJ. Affirmed.

Libel for divorce. Before HEMPHILL, P. J.

The facts are stated in the opinion of the Superior Court.

Verdict and judgment for defendant. Plaintiff appealed.

*Error assigned* was in refusing binding instructions for plaintiff.

*Thomas W. Pierce,* with him *C. Wesley Talbot,* for appellant, cited: Eshbach v. Eshbach, 23 Pa. 343; Russell v. Russell, 37 Pa. Superior Ct. 348; Edmond's App., 57 Pa. 232; Carey v. Carey, 25 Pa. Superior Ct. 223; Hardie v. Hardie, 162 Pa. 227.

*John J. Gheen* and *Alfred P. Reid,* for appellee.

OPINION BY HENDERSON, J., May 12, 1910:

The cause of action set forth in the libel was willful and malicious desertion. After the answer of the respondent was filed denying the fact alleged the complainant demanded a jury trial and from the judgment entered on the verdict this appeal is taken. We are now asked to declare that the evidence was insufficient to support the verdict and that the jury should have been instructed to find for the libelant. All of the testimony for the respondent is therefore to be taken as true and

she is also entitled to the benefit of all the inferences which the jury might legitimately draw therefrom. This evidence shows that the parties were married in March, 1889, and immediately thereafter commenced house-keeping on a farm which had theretofore been occupied by the libelant's father. After a few months there, the complainant commenced to treat his wife with great indifference, habitually absented himself from her company and when she came into his presence he avoided her and in the course of time told her that he never would recognize her as his wife. For nearly a year he would not occupy the same room with her, nor pay any attention to her; as the respondent expressed it, "He utterly ignored me." He remained away from her by day and by night, part of the time engaged in his business as a drover, but at no time explaining to her where he was or what he was doing. This condition of things continued until April 1, 1890, when the father and mother of the complainant were brought to the farm by the latter and put in possession of the house, the mother assuming the control and management of the domestic establishment, and the respondent being relegated to the use of two rooms on the second floor of the house. This arrangement was made against the protest of the wife and without her knowledge that it was actually to be done until the father-in-law and mother-in-law arrived on the premises. The respondent was thus put out of control of her own home and out of the use of the principal part of it and subjected to the management of the mother of the complainant and her servant. Thus matters remained during the summer and fall, the respondent being subjected to numerous annoyances and vexations and much mental distress because of the situation in which she was placed. As winter approached no arrangement was made for fire in the rooms which she occupied, the only provision for heat being a pipe in one room from a stove in a room below, but this was not sufficient for the inclement weather of winter and when the respondent

attempted to increase the heat in the stove her efforts were thwarted by the interference of the servant and she was told by her mother-in-law that the servant was in charge of that department. The rooms became so cold in December that she could not occupy them with comfort or safety and she became so worried and prostrated by her situation that she feared she might become helpless and incapable of caring for herself. She then went to her husband and told him that she could not put up with this any longer and asked him to furnish her a separate home, to which he replied that he never would; that he would not furnish any other home than the one she had there. Thereupon, she told him that she would give him until April 1 to provide her a home, and that if he did not do it then she would have to do something else. After this conversation the respondent took her clothing and went to her father's house intending to give her husband an opportunity to provide a place for her. Her goods other than her wearing apparel she left at the house. The libelant did not communicate with her afterward and some time after April 1, she instituted a proceeding under the act of 1867, to compel her husband to support her, in which proceeding an order was made by the court of quarter sessions directing the husband to pay $2.50 per week to his wife. At that hearing the respondent offered to live with her husband if he would furnish a home for her apart from his father and mother. This, the libelant refused to do. No question is raised as to the ability of the appellant to provide a comfortable and suitable home for himself and his wife. Some time in July after the proceeding in court the respondent and her brother went to the libelant's house and got her goods. This was done pursuant to an arrangement and agreement between the counsel of the respective parties. From that time on they continued to live apart and no communication was had by the libelant with his wife up to the time the libel was filed. The learned trial judge instructed the jury to find from the evidence whether

the respondent was guilty of willful and malicious desertion and absence from the habitation of her husband without reasonable cause, and we are not able to say that this was erroneous.  Desertion is an actual abandonment of matrimonial cohabitation with an intent to desert, willfully and maliciously persisted in without cause for two years.  This intention becomes apparent when without cause or consent either party withdraws from the residence of the other.  Whether there was consent or absence of reasonable cause is a question of fact properly disposed of by the jury where there is evidence bearing on the question.  It was said in Richards v. Richards, 37 Pa. 225, "We can exercise no sound judgment without studying the acts complained of in their connection with the character of the parties and for this we want the common sense of the jury rather than fixed legal rules."  The allegation of the respondent was that she was subjected to such indignities as rendered her condition intolerable and her life burdensome.  The acts or course of conduct which will amount to such indignities are not defined, and it was intimated in May v. May, 62 Pa. 206, that they are incapable of specification or exact definition.  They were referred to in Eshbach v. Eshbach, 23 Pa. 343, as possible in numberless forms.  The judge and jury who saw and heard the parties and their witnesses were satisfied that the respondent was not guilty of willful and malicious desertion, and we are not willing to say that the evidence did not justify the verdict.  The testimony tends strongly to show that Mrs. Merrick did not leave the house with the intention of deserting her husband.  He seems not to have objected to her going, nor to have desired her to remain or come back, and the jury might have concluded that there was a separation merely and not a desertion.  The evidence for the respondent would lead the jury to believe that the libelant was desirous of living apart from his wife and that he did not wish her presence or her society and that he was making it uncomfortable for her in order that she might be in-

duced to leave. His whole conduct has that complexion when viewed in the light of the respondent's testimony which as has been observed the jury credited. Separation is not desertion, and if the respondent went to her father's home with the approval of her husband who had turned against her and determined never to regard her as his wife again, she cannot be properly charged with willful and malicious desertion: Ingersoll v. Ingersoll, 49 Pa. 249; Middleton v. Middleton, 187 Pa. 612. When we consider the charge of the court and the testimony presented we think the learned trial judge was not in error in affirming the defendant's third point. The transaction to which it referred occurred some months after the defendant left the plaintiff's house and was proved as one of the facts tending to show the intention of the complainant to bring about a separation. He did not speak to his wife at the time she went away although he was then at the house, nor make any objection to her departure nor ever communicate with her in any way thereafter, and his action in refusing to provide any other conditions of living than those which his wife had at the time she left, was evidence of a determined purpose to get rid of her or to provoke a desertion on her part. Under such circumstances the action of the wife declining to return until a reasonably suitable place was provided for her, did not of itself amount to willful and malicious desertion but a separation rather encouraged by the plaintiff.

The assignments are overruled and the judgment affirmed.

RICE, P. J., dissented.