## Cunningham *v.* Cunningham, Appellant.

*Husband and wife—Separation—Refusal of intercourse—Equity— Support—Acts of May 23, 1907, P. L. 227, and April 27, 1909, P. L. 182.*

1. A wife is not entitled to maintain a bill in equity against her husband under the Act of May 23, 1907, P. L. 227, as amended by the Act of April 27, 1909, P. L. 182, to compel him to support her after desertion, where it appears that the parties had lived together in the wife's father's house for fourteen years; that the wife had always refused to have sexual intercourse; that she had been continuously fault-finding, unreasonable and disagreeable, so that the husband's health had been affected, that she always refused to go with her husband to establish a home of their own, and that she had received from her husband several thousand dollars of his savings which she had invested in her own name.

2. The acts of 1907, and 1909, were not intended as a substitute for a proceeding in divorce.

3. It is not the policy of the law to encourage the living apart of husband and wife while the marital relation exists in force.

Argued Oct. 5, 1911. Appeal, No. 30, Oct. T., 1911, by defendant, from decree of C. P. No. 1, Phila. Co., June T., 1910, No. 3,648, on bill in equity in suit of Irene D. Cunningham v. Clement Remington H. Cunningham. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ. Reversed.

Bill in equity by a wife against her husband for support. Before MAGILL, J.

The facts are stated in the opinion of the Superior Court.

*Error assigned* was decree allowing plaintiff $100 per month.

*Francis S. McIlhenny*, with him *F. Corlies Morgan*, for appellant.—It is respectfully submitted that a court of equity will not necessarily require the husband to prove a case which would entitle him to a divorce in order to show a reasonable cause for his separation from his wife, but only such circumstances as would constitute a reasonable cause for such an act, considering the actions of the parties generally and inquiring particularly into the conduct of the wife with a view of ascertaining whether her conduct has been such as to equitably entitle her to be supported by her husband. It is contended on behalf of the defendant that the evidence which has been reviewed has clearly shown that the defendant is entitled to a divorce from the plaintiff under the Act of June 25, 1895, P. L. 308, which provides that a divorce may be granted "where a wife shall have, by cruel and barbarous treatment or indignities to his person rendered the condition of her husband intolerable, or life burdensome:" Barnsdall v. Barnsdall, 171 Pa. 625; Russell v. Russell, 37 Pa. Superior Ct. 348; Heilbron y. Heilbron, 158 Pa. 297; Fay v. Fay, 27 Pa. Superior Ct. 328.

That the law imposes upon the wife the duty of permitting her husband to have intercourse with her is established by those cases which hold that a husband cannot be guilty of an actual rape upon his wife, on account of the matrimonial consent which she has given and which she cannot retract: State v. Haines, 51 La. Ann. 731 (25 So. Repr. 372, 44 L. R. A. 837).

*D. P. Hibberd*, with him *William Taylor* and *Samuel P. Tull*, for appellee.—It is settled law that the reason-

able cause which justifies a desertion by husband or wife must be such as would entitle the deserting one to a divorce under the laws of this commonwealth: Eshbach v. Eshbach, 23 Pa. 343; Gordon v. Gordon, 48 Pa. 226; Klopfer's Appeal, 1 Mona. (Pa.) 81.

The law of Pennsylvania is firmly and clearly settled that refusal of husband or wife to have sexual intercourse is not good cause for the other either as to desertion or divorce: Eshbach v. Eshbach, 23 Pa. 343; D'Aguilar v. D'Aguilar, 1 Haggard's Ecc. 773; Johnson v. Johnson, 31 Pa. Superior Ct. 53; Klopfer's App., 1 Mona. (Pa.) 81; Berger v. Berger, 23 Pa. C. C. Rep. 232; Platt v. Platt, 38 Pa. Superior Ct. 551; Southwick v. Southwick, 97 Mass. 327; Cowles v. Cowles, 112 Mass. 298; Schoessow v. Schoessow, 83 Wis. 553 (53 N. W. Repr. 856); Fritz v. Fritz, 138 Ill. 436 (28 N. E. Repr. 1058); Segelbaum v. Segelbaum, 39 Minn. 258 (39 N. W. Repr. 492); Morrison v. Morrison, 20 Cal. 431; Anonymous, 52 N. J. Eq. 349; Watson v. Watson, 28 Atl. Repr. 467.

OPINION BY ORLADY, J., March 1, 1912:

The bill in equity in this case is filed by the wife, under the Act of May 23, 1907, P. L. 227, as amended by the Act of April 27, 1909, P. L. 182, to compel her husband to maintain and support her.

The act provides: "If any man shall separate himself from his wife without reasonable cause, and, being of sufficient ability, shall neglect or refuse to provide suitable maintenance for his said wife, such wife shall be and is hereby empowered to bring her action at law or in equity, against such husband, for maintenance, in the court of common pleas where the desertion occurred, or where she is domiciled; and the said court shall have power to entertain a bill in equity in such action, and shall make and enforce such orders and decrees as the equities of the case demand." The case was heard on bill, answer and testimony and resulted in the court making a decree requiring the husband to pay to the wife the sum of $100 per month

for her maintenance, from which decree an appeal was taken by the husband.

The parties are now thirty-eight years of age; were married December 4, 1895. On December 12, 1909, the husband left their home. This bill was filed July 25, 1910, and soon thereafter the husband instituted proceedings in divorce for causes which do not appear in this record and which action is yet pending in common pleas, No: 3, of Philadelphia county.

This record shows that the parties lived together during the whole of their married life in apparent amity, visited and entertained friends; and occupied the same bed continuously.

The husband objected to living in the family of the wife's father and requested a number of times that she go with him and establish a home of their own, to which the wife objected and as regularly as the offer was made it was refused by her.

The husband repeatedly urged the wife to consent to their having sexual intercourse but she persistently refused, and such a relation was never consummated. In regard to this separation, she was interrogated on the trial by the court, viz.: " Q. The night your husband left you, when he suggested that he wanted to live the life of a normal man and that he preferred to have children, did you express a willingness to live such a life? A. I was struck dumb, I didn't say anything. Q. You didn't express any willingness to live in that way? A. No, sir. Q. And you have never been willing so to live? A. No, sir. Q. Are you willing that Mr. Cunningham should return to you and that you should live as husband and wife and that you should have sexual intercourse? A. Not under the conditions. Q. Are you willing for him to return to you? A. With the fear I have gained from actions, I cannot say I am willing. Q. What do you mean by that? Do you fear him now? A. I do, for the simple reason that I think his love for me is lost by his leaving the room at nights, and coming in at different hours of the

night. That has made me have fear of him. Q. Did this continue until your husband did go away? A. It has, and I have told him of it, that I was afraid of him. He asked me what I was afraid of; I said I could not place that fear, something came over me that I had lost his love so much, that I believe bodily harm would come over me from it. Q. He never threatened you, did he? A. No, sir. Q. So you really have no actual basis for this fear of his injuring you. A. He never gave me any word of mouth or action of hand that he would destroy me in any way. Q. And during these fourteen years in which you lived with him, he was never a brutal man, was he? A. Never. When he went out of the room the night he left, he said—' Irene, if you are not human, I am,' and left."

The above facts are substantially admitted by the wife, many of them are from her own testimony, and in addition to these the defendant called as if under cross-examination, testified that the wife was continually fault-finding, unreasonable and disagreeable, so that by this persistent course of treatment his health became seriously impaired, he became nervous, could not sleep, and that since he left his wife he had gained over thirty pounds in weight to the time of the hearing.

The court specially finds as a fact that the defendant is an intelligent and industrious man whose efforts in business have been successful, and during the time he lived with his wife he gave to her at different times, sums of money for her to invest in her own name, which aggregate in present market values $7,470, and yield an annual income of about $500.

The attitude of the wife in relation to her views about not having sexual intercourse with her husband dates back to before their marriage and in anticipation of it, when as she testifies they entered into an agreement or vow, that they would live the rest of their lives in perfect purity, which she interpreted to mean total abstinence from sexual intercourse.

The testimony of the husband on this subject is as fol-

lows: " Q. Describe the oath that Mrs. Cunningham said you and she took before your marriage. A. We decided to live a pure life, and by purity we meant simply to keep to ourselves, that we would keep our troubles to ourselves; that if any differences came, never to mention such a thing to a soul, and that was a thing I had not done until just prior to leaving home, things became unbearable, I told her father of the real facts, I had to, and by purity I simply meant to lead a proper kind of a life, what a person would call a pure life."

These acts of 1907 and 1909, furnish an added protection to wives who have been deserted by their husbands without reasonable cause, and the resort to a proceeding in equity is to be had in exceptional cases only, so as to bring the controversy more speedily and directly to the attention of a judge sitting as a chancellor, to the end that he "shall make and enforce such orders and decrees as the equities of the case demand."

Nothing in this record indicates that this plaintiff did not have an ample and adequate remedy under the Act of April 13, 1867, P. L. 78; Com. v. Dilks, 45 Pa. Superior Ct. 339, and cases therein cited: Merrick v. Merrick, 43 Pa. Superior Ct. 13. These latter acts are not intended as a substitute for a proceeding in divorce, nor is it the policy of the law to encourage the living apart of husband and wife while the marital relation exists in force.

After the marriage contract is entered into the rights, duties and obligations of the parties are fixed by the law. The relation is said to be the parent and not the child of civil society, regulated and prescribed by law, and endowed with civil consequences. It is more than a civil contract, it is an institution of the state. It supersedes all other contracts between the parties, in relation to it and with certain exceptions it is inconsistent with the power to make new ones. See Kilborn v. Field, 78 Pa. 194. Our whole social system is founded on the theory of husband and wife living together as such, and the natural

and reasonable expectancy is that children shall be born in that lawful wedlock.

This act does not require a chancellor to decide whether the parties should be divorced or not. The only question is, Has she presented a case which entitles her to equitable relief? She is met at the threshold, with certain prerequisite maxims, which are general guiding principles. He who seeks equity must do equity.—He who comes into equity must come with clean hands.—Equity regards the substance and intent, not the form.—Where the equities are equal the law will prevail.

She does not seek a severance of the contract of marriage, but asserts it, to compel her husband to maintain her while living apart from him. She interprets her duty in a way that is opposed to universal law, the dictates of humanity and public policy; and this after repeated refusals to live in a home of his own making. She attempts to read into the marriage contract a clause which would practically annul it, and defeat its purpose as a civil institution, and this, solely on account of an unnatural and perverted view of what constitutes purity of the marital relation.

While the refusal to have sexual intercourse is not of itself legal cruelty, within the meaning of our divorce statutes, Platt v. Platt, 38 Pa. Superior Ct. 551, and cases therein cited, we are, in this case, asked to take a long step in advance of those decisions and hold that a wife who without reasonable cause shown, persistently refuses to perform in good faith her conjugal duties, is entitled by this extraordinary remedy to equitable relief to enforce the marriage contract so far as her maintenance is concerned. She suggests no physical defect in the husband, or any reason other than an unreasonable antenuptial agreement.

In these statutes as in that of 1867, maintenance is the sole object, Com. v. Dilks, 45 Pa. Superior Ct. 339, and to entitle the wife to the equitable relief provided by the act of 1909, she must show specially that she is without

fault on her own part: Yetter v. Yetter, 45 Pa. Superior Ct. 332.

The husband's case does not depend alone on his deprivation of his expectations in regard to sexual intercourse and to have children, but he submits a series of acts which continued through years and culminated in his declaration to his wife—"Irene, if you are not human, I am," and left—"because it was unbearable—my health was breaking down," and her refusal to resume the marital relation with him under any condition—these are not denied by the wife and she presents on the whole record an abnormal condition of affairs, entirely of her own making, and which do not entitle her to this special remedy. The court erred in finding as a fact that the defendant separated himself from his wife without reasonable cause, and in making the decree entered in the case. The whole controversy may be well disposed of in the divorce proceeding.

The second and third assignments of error are sustained, the judgment is reversed and the bill dismissed.