## Smith v. Smith.

*Divorce—Desertion—Evidence—Sufficiency—Consent to separation.*

Mere non-support and separation does not constitute desertion. The guilty intent to desert is rebutted where the separation is encouraged by the other party or by mutual consent. Mutual consent to separation, not revoked by either party, is as fatal to an application for divorce on the ground of desertion as would be acts on the part of the libellant which would give the respondent legal cause to leave.

Divorce. C. P. Schuylkill Co., Nov. T., 1922, No. 15.

*R. R. Koch* and *Henry Houck*, for libellant.

BERGER, J., Feb. 11, 1924.—This is an action of divorce on the ground of desertion. The parties were married Aug. 2, 1906, at Waverly, Tioga County, N. Y., and have one child, a daughter, eight years old. The libellant has been a resident of the county since 1921. Since their marriage the parties have lived at numerous places: Towanda, Pa., three months; Laquin, Pa., eighteen months; Reynoldsville, W. Va., nine months; Rhymersburg, Pa., eight months; Gloucester, Mass., five months; Boston, Mass., one year; Rochester, N. H., fourteen months; Concord, N. H., twenty-one months; Springfield, Mass., twenty-two months; Brookline, Mass., two years; Blackwell, Okla., about eighteen months; Pottsville, Pa., about four months, or until February, 1921. About February, 1921, the libellant and her husband left their home at Pottsville to visit his sister near Towanda, Pa. The purpose

## Smith v. Smith.

of the visit was "to get him (the respondent) settled to work and to establish a permanent home" at the home of his sister. On March 1, 1921, while the libellant and her daughter were with the respondent and his sister at Towanda, he borrowed $150 from his sister to go to Arizona, but returned "in five days, broke and without employment." Then he left again with money furnished to him by his wife, and since then she has not seen him. She and her daughter returned to live with her mother and her sister in Pottsville, where the respondent sent $22 toward the support of herself and their child, in four payments, from June 19, 1921, to July 18, 1921, both inclusive. The libellant has supported herself by nursing, and he wrote to her asking her to live with him, but he had no work, no money and no home provided for them. The master made a report recommending a decree, but the court, being of the opinion that the evidence did not support it, remanded the case to the master Sept. 10, 1923, for the purpose of enabling the libellant to establish her cause of divorce, if she could. Thereafter, at a supplemental hearing held Oct. 20, 1923, additional testimony was taken. At the first hearing the respondent testified that "for some years there was dissension in our family on account of his (the respondent's) fondness for high life and gay parties. He frequently acknowledged wrongdoing with women, and I forgave him on account of our little girl and my family pride. I always conducted our home properly and behaved myself as a woman should. When he left home he gave me no idea that he was not going to return. He wrote asking us to come, but he had no work and no home provided and had no money. The last place I definitely knew him to be was at Towanda, Pa., at his sister's." At the supplemental hearing she testified: "When he returned from Arizona, about March 5 or 6, 1921, broke, his sister would give him no more money. I had only about $20, which I gave him, and he left. There was no agreement about it at all. He just left without a word and never came back. He had no plans in view when he left Towanda—at least, he told me of none—and did not say where he was going. He wrote me several times, the last time in July, 1921, when he sent the last money, $9. He never had a place for me to come and live with him; never asked me to do so; never mentioned establishing a home again. He got no job, and sponged on friends wherever he could." Mrs. Laura Gunton, the libellant's mother, testified that she had a call on the Bell telephone from Philadelphia by an operator, who inquired for Mrs. Alice Smith, and that she told her she was not at home. Asked whether she could connect her with her, Mrs. Gunton replied that she did not know exactly where to reach her by telephone, that she was out of town. She then clearly heard the voice of Mr. Smith putting questions to the telephone operator, which she propounded to her, asking for his wife's address, which Mrs. Gunton again said she could not furnish, because she did not know her exact whereabouts. After some further conversation between Mr. Smith and the telephone operator, which she overheard on the telephone, the telephone operator said: "This is her (Mrs. Smith's) husband talking. Tell her I am leaving the United States in forty-eight hours." This, Mrs. Gunton testified, was the last they had ever heard from the respondent, and, of course, they had not seen him since then.

The evidence clearly shows that the respondent has not supported his wife and child properly since March 1, 1921, the date of the alleged desertion, and that he has contributed nothing to their support since July 18, 1921; but mere non-support does not make out a charge of desertion: Dunn v. Dunn, 18 Schuyl. Legal Rec. 177. The separation on March 1, 1921, was by mutual

### Smith v. Smith.

consent of the parties, caused, in part, at least, by the roving disposition of the respondent and his inability, failure or refusal to support his wife and child in their accustomed manner. The libellant, at the supplemental hearing before the master, denied that the separation was by mutual agreement, but the evidence does not, in our opinion, sustain that view. She gave her husband the money with which to go away on March 5th or 6th, 1921, and although she received a number of letters from her husband afterwards asking her to return to him, she produced none of them. A fair inference, therefore, is that she made no reply to any of his letters; and this view is strengthened by the fact that the respondent tried to get her address from her mother, but failed in his effort. The husband's statement over the telephone to his mother-in-law, after having failed to get his wife's address from her, that he intended to go to Europe in forty-eight hours, is more consistent with a desire on his part to ascertain his wife's whereabouts for the purpose of writing to her or of seeing her, than with an intention to persist in or commit desertion. Upon this record it is fair to assume that the libellant, after March 5th or 6th, 1921, neither communicated with her husband nor desired any communication from him. It is not for us to say that this attitude toward her husband was unjustified, for the only question with which we have any concern is whether the libellant's evidence makes out a case of wilful and malicious desertion. In Thompson v. Thompson, 50 Pa. Superior Ct. 159, 166-167, Rice, P. J., said: " 'Separation is not desertion. Desertion is an actual abandonment of matrimonial cohabitation with an intent to desert wilfully and maliciously persisted in without cause for two years:' Ingersoll v. Ingersoll, 49 Pa. 249; Middleton v. Middleton, 187 Pa. 612; Cooper v. Cooper, 37 Pa. Superior Ct. 246; Merrick v. Merrick, 43 Pa. Superior Ct. 13. The guilty intent to desert is rebutted where the separation is encouraged by the other party or by mutual consent. Mutual consent to the separation, not revoked by either party, is as fatal to an application for divorce on the ground of desertion as would be acts on the part of the libellant which would give the respondent legal cause to leave him. Upon this subject we refer to the opinion of Judge King in Butler v. Butler, 1 Parsons' Sel. Eq. Cases, 329, the doctrine of which has been recognized in many subsequent cases. See, also, Vanleer v. Vanleer, 13 Pa. 211; 1 Bish. Mar., Div. & Sep., § 1667. Again, the mutual consent that will prevent a divorce upon the ground of desertion may be inferred from the conduct of the parties, and need not be put in the form of a solemn, written agreement: Olson v. Olson, 27 Pa. Superior Ct. 128; King v. King, 36 Pa. Superior Ct. 33. Viewing the testimony in the light of these well-settled principles, we unhesitatingly conclude that the most unfavorable inference against the respondent that can be legitimately drawn from the conduct of the parties is that the separation during these nine years, or thereabouts, was with the tacit assent of each."

After a careful reading of all the testimony, we are constrained to reject the recommendation. For, as is stated by Trexler, J., in Heckman v. Heckman, 81 Pa. Superior Ct. 370, 374: " 'Courts ought never to sever the marriage contract, but where the application is made in sincerity and truth for the causes set forth and no other, and fully sustained by the testimony:' Forrester v. Forrester, 77 Pa. Superior Ct. 364, and cases there cited." See Boller v. Boller, 81 Pa. Superior Ct. 334, 337.

And now, Feb. 11, 1924, libel dismissed, and the libellant is hereby directed to pay the costs.

From M. M. Burke, Shenandoah, Pa.