Clark v. Clark

*Walter T. Fahy*, for plaintiff; *Samuel W. Salus*, for defendant.

LEWIS, J., July 19, 1932.—The plaintiff, a married woman, who alleges that she was deserted by her husband, brings this action against him to recover moneys which she claimed she expended out of her separate estate to provide for her own support and maintenance. It is contended by the husband:

(1) That a wife cannot recover from her husband money laid out by her for her own support, except by alleging and proving a promise of the husband, either express or implied, to refund it to her;

(2) That an action for support cannot be maintained by the wife because she cannot sue the husband directly for breach of the marital contract;

(3) That the provisions of the Act of May 23, 1907, P. L. 227, as amended by section one of the Act of April 27, 1909, P. L. 182, are a barrier to the municipal court assuming jurisdiction over the controversy.

The case was heard by the court without a jury, and it appears from the testimony that the defendant was confined in a state institution for the insane from June, 1923, to February 27, 1928; that the plaintiff was appointed guardian of her husband's estate by the Court of Common Pleas No. 5 of Philadelphia County, as of December Term, 1923, No. 1905, and that in said proceedings the court of common pleas ordered that the sum of $20 per week be paid out of the defendant's estate for the support and maintenance of his wife; that the order for support terminated upon the defendant's discharge as guardian of her husband's estate on February 27, 1928; that from February 27, 1928, to March 17, 1931, a period of 159 weeks, the defendant did not contribute toward the support or maintenance of his wife.

On March 17, 1931, the domestic relations division of this court, upon application by plaintiff, in a support proceeding, awarded her the sum of $6 per week for her future maintenance.

The relevant portion of the Act of May 23, 1907, P. L. 227, as amended, which is cited above, is as follows:

"If any man shall separate himself from his wife without reasonable cause, and, being of sufficient ability, shall neglect or refuse to provide suitable maintenance for his said wife, such wife shall be and is hereby empowered to bring her action, at law or in equity, against such husband for maintenance, in the court of common pleas of the county where the desertion occurred, or where she is domiciled; and the said court shall have power to entertain a bill in equity in such action, and shall make and enforce such orders and decrees as the equities of the case demand; and in such action, at law or in equity, the husband and wife shall be fully competent witnesses."

Linn, J., in Scott *v*. Scott, 80 Pa. Superior Ct. 141 (1922), in an able and exhaustive opinion, decided that the Act of July 12, 1913, P. L. 711, as supplemented and amended, creating the Municipal Court of Philadelphia, confers upon that court *exclusive* civil and criminal jurisdiction in all proceedings brought against any husband wherein it is charged that he has without reasonable cause separated himself from his wife or has neglected to maintain his wife. In dismissing the contention that the common pleas court has retained jurisdiction in Philadelphia County in matters relating to provision for support of a deserted wife, under the provisions of the Act of 1907, above quoted, he stated that by the term "all proceedings" of the kind specified in section eleven (a) of the Act of July 12, 1913, P. L. 711 (17 PS § 694), establishing the Municipal Court of Philadelphia, the legislature meant "all proceedings

specified, whether civil or criminal in their nature:" Cunningham v. Cunningham, 48 Pa. Superior Ct. 442 (1912). See, also, Com. ex rel. Shecter v. Shecter, 24 Dist. R. 928, affirmed in 59 Pa. Superior Ct. 38, reversed in 250 Pa. 282 (1915).

In Arthur v. Arthur et al., Exec'rs, 12 D. & C. 578 (1929), it was held that the Municipal Court of Philadelphia County has exclusive jurisdiction in desertion and nonsupport cases, under section eleven (a) of the Act of July 12, 1913, P. L. 711, and is not limited in amount as in other civil cases under section ten of the Act of July 12, 1913, P. L. 711, as amended by the Act of July 11, 1923, P. L. 1035 (17 PS § 693).

It will be observed that the Act of May 23, 1907, P. L. 227, as amended by the Act of April 27, 1909, P. L. 182 (48 PS § 131), provides that the deserted wife is empowered to bring her action at law or in equity for maintenance. The question is then presented whether or not the word "maintenance" is a term applicable to support in the future or whether it will bear the interpretation that will permit a recovery by a deserted wife from her husband of the amount expended by her from her separate estate for her own support.

"Maintenance" is defined in 38 C. J. 338 as follows:

"A large term whose meaning depends on the surrounding circumstances and the connection in which it is applied. Maintenance has been defined as meaning act of maintaining, keeping up, supporting or upholding; or state of being maintained; also, aid; assistance; livelihood; means of sustenance; preservation; subsistence; supply of necessaries and conveniences; support; sustenance; that which maintains or supports. . . .

"Supply of the necessaries of life; livelihood; the furnishing by one person to another, for his support, of the means of living, or food, or shelter, clothing, etc.; the support which one person, who is bound by law to do so, gives to another."

In one of the cases, the term "maintenance" has been defined to mean clothing, food, and shelter, or tuition, clothing, food and shelter, depending upon the circumstances surrounding the parties and the connection in which it is applied.

The law requires a husband to support, care for, and provide comforts for his wife. A husband and wife, with reference to their marital rights, do not occupy the position of strangers before the court, but it has a reasonable solicitude for the protection of the wife with reference to her support and maintenance: Doty v. Rensselaer, 194 App. Div. 841, 185 N. Y. Supp. 466.

The statutes do not change the law as to the civil liability of the husband to furnish his wife with reasonable support. The proposition has been stated in this form: that the common-law duty of a husband to support his family has not been changed by the legislation relating to married women. See 30 C. J. 516, Secs. 29, 30.

The duty of support resting on the husband does not depend on the adequacy or inadequacy of the wife's means or on the ability or inability of the wife to support herself by her own labor or out of her own separate property: 30 C. J. 517, Sec. 29.

A husband is under a natural obligation to furnish necessaries to his wife, and if the husband neglects that duty any person who supplies such necessaries is deemed to have conferred a benefit upon the delinquent husband for which the law raises on the part of the husband an implied promise to pay. A corollary of the rule is the proposition that, where a person has advanced money to a wife deserted by her husband to purchase necessaries and the money has been so applied, he can maintain an action against the husband for the moneys so advanced: Kenyon v. Farris, 47 Conn. 510.

The common-law rule, that the personal property of the wife and all her earnings belong to her husband, has been changed by legislation in Pennsylvania (Act of April 3, 1872, P. L. 35, Sec. 1), to the extent that all earnings acquired by the wife in carrying on any separate or independent business, or in performing any labor or services on her sole and separate account, are vested exclusively in her, and her husband has no right thereto, although it may be said, in passing, that this legislation does not affect or change the rule as to the earnings of the wife acquired in her capacity as wife, for services rendered about her household duties or when assisting her husband in his business: Standen v. Penna. R. R. Co., 214 Pa. 189.

Plaintiff, having applied her separate estate to the fulfillment of the obligation resting primarily on her husband, is entitled to recover from him such sum as he would have been compelled to expend in discharge of his obligation: De Brauwere v. De Brauwere, 203 N. Y. 460, 463.

· As was there said by Bartlett, J.:

"The learned judge who tried the case at special term was inclined to think that the plaintiff's right to recover should be sustained upon the doctrine of subrogation, the wife being subrogated to the rights of the persons who furnished the necessaries for herself and the children and whom she had paid therefor. We prefer to place his liability on a different ground. The husband was unquestionably under a legal obligation to provide his wife and children with the necessaries of life suitable to their condition. This liability would have been enforceable by the wife in her own behalf and in behalf of her infant children were it not for her disability at common law to sue her husband. That disability having been removed, a wife who has applied her separate estate to the purpose of an obligation resting primarily upon her husband may now recover from him the reasonable amounts which she has thus expended out of her separate estate in discharge of his obligation. In other words, under the common law such a claim as that in suit was not enforceable, because a married woman was incapable of owning any separate estate and likewise incapable of maintaining an action at law against her husband. These obstacles have been removed by placing a married woman on the same footing with a woman who is unmarried in respect to her property rights, and by permitting her to enforce such rights in the courts against her husband no less than against strangers. The plainest principles of justice require that a wife should have some adequate legal redress upon such a state of facts as that set forth in this complaint, and the beneficial character of our legislation removing the former disabilities of married women could not be evidenced more forcibly than it is in its application to the present case."

The Act of May 23, 1907, P. L. 227, being in aid of a well-established common-law right, should be liberally construed, particularly in the lights of its just and beneficent purpose.

Applying this rule of construction, we think that the legislature has used the term "maintenance" in its broadest sense, intending to protect the right of the wife to support for any period prior to the commencement of the action, as well as future support: 30 C. J. 1080, Sec. 878.

In re Wood's Estate, 1 De G. J. & S. 465, 46 Eng. Reprints 185, where the husband had been placed in an asylum as a lunatic, and the wife, during a delay in the payment of her separate income, borrowed certain sums of money for maintenance, it was held that these sums should be allowed as a claim against his estate, the contention being overruled that the circumstances should be regarded as constituting a separation by consent, and that where the wife is living separate from her husband and has a separate income, she is not entitled to pledge her husband's credit.

The testimony regarding the separation of the parties in this case, and the reason, if any, therefor, is rather meagre. Plaintiff testified that after her husband was released from the asylum for the insane, she spoke to him about coming back to live with her, and that he refused. Defendant denied that such suggestion was made to him, but asserted that he was advised by parties interested in his case, and by friends, not to return to her, and stated further that he would not have returned to her if she had requested him to do so "because I could not trust her."

The record is devoid of any competent evidence that a reasonable cause for the separation, such as is contemplated by the provisions of the Act of 1907, supra, existed. No testimony was offered that the plaintiff had in any manner failed in her marital obligations to the defendant or that plaintiff was unwilling to resume cohabitation with the defendant, and at no time does a bona fide offer appear to have been made by defendant to again establish the plaintiff as his wife in his home, and there to maintain her.

We think that the defendant was legally bound to contribute to her support and maintenance during the period of separation, and, limiting this question to the defendant's financial ability during the period from February 27, 1928, to March 17, 1931, during which time the defendant concededly contributed nothing to plaintiff's support, we adopt, as our finding, defendant's own testimony that his income at and shortly after his release from the asylum, and the recovery by him of his property, amounted to approximately $1300 annually. Defendant is eighty-one years of age and is unable because of that to engage in any occupation for profit, being confined in his income to the rental value of a few small properties and the interest on a mortgage of $2000. The settled policy in cases of this character seems to be that the amount awarded shall not exceed one-third of the property and income from the property and labor of the husband: Com. v. Gilleland, 93 Pa. Superior Ct. 307.

There are probably special circumstances here warranting a departure from this rule. Consequently, were we to make any finding in favor of the plaintiff in this case, we would fix the amount of the defendant's obligation to the plaintiff in a sum not to exceed $1059.40.

A counterclaim, however, was filed by the husband against the wife, setting up in paragraph ten the following language:

"That in about the year 1908, defendant opened an account with the Columbia Avenue Title and Trust Company, now the Integrity Trust Company, in defendant's name, and that all moneys deposited in said account belonged to the defendant, and no money was deposited in said account belonging to the plaintiff; that about the year 1918, the defendant had an ailment of his right arm and hand and was unable to sign checks, and at the suggestion of the Columbia Avenue Title and Trust Company arranged that the plaintiff could sign checks and withdraw money from said account if necessary; and this arrangement was to be of a temporary nature; that during the time that the defendant was in said Norristown State Hospital, and particularly during the time immediately preceding his discharge as aforesaid, said moneys were withdrawn from the bank by the plaintiff, his wife, and used for her own personal purposes, and the defendant received no benefit therefrom; that said moneys deposited as aforesaid were not included in the moneys received by the plaintiff in her capacity as guardian of the estate of Thomas M. Clark, an alleged lunatic, and, therefore, not forming any part of the account which she filed as guardian of defendant's estate; that the amount in said account with the Columbia Avenue Title and Trust Company with accrued interest was approximately $3000 and being the moneys which the defendant himself accumulated,

and all of said moneys were withdrawn by the plaintiff and used by her as aforesaid, and no account has ever been rendered to the defendant by the plaintiff, and the account in the Columbia Avenue Title and Trust Company was closed by the plaintiff at or about the time the defendant was discharged as aforesaid, and defendant believes that the greater part or portion of said deposit was withdrawn at or immediately before the time defendant was discharged from said institution."

This paragraph in the counterclaim was insufficiently and improperly denied in the reply filed by the plaintiff.

It was pointed out in Buehler v. U. S. Fashion Plate Co., 269 Pa. 428, 433 (1921), that:

"A fact averred in the statement of claim, and not specifically denied in the affidavit of defense, is an admitted fact, but does not become such for purposes of trial, unless put before the jury in one of three ways: (1) By the presiding judge stating to the official stenographer, in the presence of counsel, that certain facts, which he details and directs to be placed on the notes of trial, are averred in the statement and not denied in the affidavit, and, hence, must be treated as admitted; or (2) by counsel directing to be placed on such notes certain detailed facts which they admit; or (3) by offering in evidence specific parts of the statement of claim, with what counsel conceive to be the replies thereto contained in the affidavit of defense, and having the facts thus sought to be established placed on the notes of trial as admitted, because averred in the statement and not denied in the affidavit of defense." See, also, Farbo v. Caskey, 272 Pa. 573 (1922); Bessemer & Lake Erie R. R. Co. v. Ford Collieries Co., 273 Pa. 166 (1922); Joseph Hoover & Sons Co. v. Corbin & Bodine, Inc., 82 Pa. Superior Ct. 167 (1923).

None of the methods indicated above was pursued in this case. However, this case was tried before a judge without a jury, and in arriving at our conclusion, with reference to paragraph ten of the counterclaim above quoted, we may regard the assertions therein, in view of the improper denial by the plaintiff, as being in evidence. As the court could have stated to the official stenographer, in the presence of counsel, that the facts contained in paragraph ten be placed on the notes of trial, because not sufficiently denied in the reply, the same must be treated as admitted. No particular formality need be observed in offering the admissions in evidence so long as every purpose of the rule laid down by Mr. Justice von Moschzisker in the Buehler case, supra, has been served. Some latitude must be allowed to the trial judge, particularly when sitting without a jury: Jameson v. Jameson, 80 Pa. Superior Ct. 254 (1922). The court feels that the rule should be liberally construed, particularly in this case, where the age of the parties involved, the circumstances of the plaintiff and the defendant and the general equities of the case require it.

We think it is safe to say that where a material fact is alleged in one pleading and admitted in the answer thereto, or where a fact alleged in one pleading is by implication admitted by failure to properly answer or deny the same, it may, for the purpose of the trial, be taken as true. What avail would it be to offer proof of something either solemnly admitted to be true, or that which under the law by implication is admitted to be true, by failure properly to contradict?

There is a disagreement among the cases outside of Pennsylvania as to the necessity of introducing a pleading in evidence in a case in which the same was filed, as other evidence is offered, before it may be used as proof. By far the greater number of jurisdictions follow the rule requiring pleadings containing admissions against interests to be offered in evidence, before being used as

proof of the admissions contained therein: see note in 14 A. L. R. 22, 89. In a minority of the states, pleadings containing admissions against interest are held to be evidence in the case in which filed without any introduction further than the original filing: 26 R. C. L. 1031, Sec. 34; Bowes v. Cannon, 50 Colo. 262, 116 Pac. 336 (1911); Smith v. Pelott, 63 Hun 632, 44 N. Y. S. R. 242, 18 N. Y. Supp. 301 (1892); Mullen v. Union Central Life Ins. Co., 182 Pa. 150; Shipley v. Reasoner, 87 Iowa 555 (1893).

The testimony in this case shows that on August 19, 1908, an account was opened with the Columbia Avenue Title and Trust Company by the defendant. In 1911 the account was changed to "Thomas M. Clark, or Mary L. Clark, payable to either or to the survivor." On July 7, 1923, this account was closed out and $2906.68 was withdrawn by the plaintiff. On October 8, 1926, the plaintiff opened an account in the same banking institution, captioned as follows: "Mary L. Clark, Guardian of the Estate of Thomas L. Clark, dec'd," and this account was opened with $2255.83. Between May 16, 1927, and April 10, 1928, various withdrawals were made by Mary L. Clark, and on April 10, 1928, the account was closed by Mary L. Clark withdrawing the sum of $77.69.

The plaintiff maintained at the trial two inconsistent positions: (1) That a sum of approximately $3000 was accounted for by her at the time she filed her account as guardian of the estate of the defendant in the Court of Common Pleas No. 5 of Philadelphia County; (2) that the sum of $2255.83 was earned by her "from keeping roomers and boarders. I gave him to put in the bank." An examination of the accounts of the plaintiff as guardian of the estate of her husband, a lunatic, filed in the Court of Common Pleas No. 5, reveals that she at no time accounted for the sum of $2906.68, which was obtained by her from the account kept in the Columbia Avenue Title and Trust Company.

So far as her testimony is concerned, that she had earned the sum of $2255.83 from keeping roomers and boarders, and that it was her own money, necessary details and data are not given. This statement is inconsistent with (1) her allegation that she had accounted for this sum of money under her guardianship; (2) the fact that she had opened the account in the name of Mary L. Clark, guardian of the estate of Thomas M. Clark. This act on her part was a declaration to the world that the moneys deposited therein belonged to the beneficiary or the person for whom the plaintiff acted as fiduciary.

A deposit in a bank made as agent or trustee for another, or in any other fiduciary capacity, is prima facie the property of the principal or of the cestui que trust: Bank of Northern Liberties v. Jones & Cole, 42 Pa. 536; Arnold et al. Post No. 13 G. A. R. v. Macungie Savings Bank, 71 Pa. 287; Burger v. Burger et al., 135 Pa. 499; Schuylkill Trust Co., Admin'r, v. Klemr et al., 12 D. & C. 44 (1928). The burden of proving ownership in plaintiff acting as the agent or fiduciary rests on her.

We deem it unnecessary to pursue this inquiry further in view of (a) the admission of the defendant's ownership of the moneys in question, resulting from the insufficient denial of the relevant averments set forth in the counterclaim filed; (b) the inadequacy of plaintiff's testimony to overcome the presumption resulting from the deposit by her of the moneys in question, to the credit of her account as her husband's guardian. As fiduciary, the business which plaintiff transacted and the money or property which she handled was not her own or for her own benefit. All moneys which came into her possession as such fiduciary, more particularly the moneys deposited by her which are the subject matter of the counterclaim in this action, were for the benefit of her husband, to whom she stood in a relation implying and necessitating great con-

fidence and trust on the one part and a high degree of good faith on the other: 25 C. J. 1118, Sec. 6.

It became the plaintiff's duty to account for the moneys which were deposited by her in the Columbia Avenue Title and Trust Company, and if any claim could be properly asserted by her arising from expenditures made on behalf of the insane person's estate, such claim could properly have been asserted and proved upon the audit of her accounts in the court of common pleas.

It is conceded by both sides that her accounts omitted all reference to the moneys represented by this particular deposit, and no justification appears from the testimony for such failure to properly include said moneys in her administration of the estate.

The objection raised by plaintiff's counsel, that the counterclaim is barred by the statute of limitations, is untenable, since the account was opened October 8, 1926, and it was not until December 6, 1930, that the auditor's report upon plaintiff's account as guardian was confirmed by the Court of Common Pleas No. 5.

While the final settlement by a fiduciary is conclusive as to all matters included therein, it is not conclusive or binding upon parties affected as to matters not included or necessarily involved therein: 24 C. J. 1029, Sec. 2484. An account filed by a guardian of a weak-minded or insane person is conclusive to all matters lawfully embraced therein, but does not bar any subsequent review of matters not embraced therein, as to which it is not conclusive: 32 C. J. 704, Sec. 429.

In the consideration of the foregoing findings and discussion, it is our conclusion that defendant is indebted to the plaintiff in the sum of $1059.40, for plaintiff's maintenance and support during the period specified herein, but that defendant has a good and valid counterclaim against the plaintiff to the extent of $2255.83, being the amount of money with which the savings deposit was opened by plaintiff as guardian for defendant.

We are accordingly constrained to find for the defendant as to plaintiff's claim; and as to the set-off and counterclaim of the defendant, we find for the defendant in the sum of $1196.43.

A finding is herein entered for the defendant against the plaintiff in the sum of $1196.43; damages to be assessed sec. reg.