## Commonwealth ex rel. Bordlemay v. Bordlemay

*Thomas A. Ehrgood*, of *Ehrgood & Ehrgood*, for exceptant.

*L. E. Meyer*, of *Meyer, Brubaker & Whitman*, contra.

GATES, P. J., January 9, 1963.—This matter is before the court on the petition of a mother for custody of her three and one-half year old minor daughter, who was, at the time of the hearing, in the custody of the father with the mother's consent. At the conclusion of the hearing, we awarded custody of the minor child to the father and gave liberal visitation rights to the mother so that she has temporary custody on the first and third Sunday of each and every month from 8 a.m. to 7 p.m., and on the second and fourth weekends of

each month from 7 p.m. on Friday to 6 p.m. on Sunday. In addition, she was awarded full temporary custody the first full week of July and the first full week of August. We directed that the child attend church and Sunday school with reasonable regularity and allowed counsel 10 days within which to file exceptions to the decree. Within the alloted time, the mother did file exceptions, complaining that the order of the court is contrary to the weight of the evidence and contrary to the laws of the Commonwealth. Thereafter, the matter was argued, and briefs were submitted.

This unfortunate marriage began in 1957, and the child of which this dispute pertains was born July 22, 1959. As of this date, the child is approximately three and one-half years of age and is clearly of "tender years" under the laws of this Commonwealth.

Prior to the separation, the parties lived together in an apartment, and both parties were employed. It was their routine to start out for work together, drop the child off at the home of a baby sitter, and the child would be picked up at the end of the day and taken to their apartment for dinner and to rest. The record reveals, and it is not contested, that the father is an unusually fine father and devotes considerable attention to his daughter and usually does domestic chores. This concession is readily made by his wife, as well as by her mother.

For approximately six months prior to the parties' separation, the husband noted a change in his wife's attitude toward him. Shortly before the parties separated in February of 1962, the wife admitted not being in love with her husband and being in love with a married man, who had a child. She admitted being out with him three or four times but that the relationship broke off in March of 1962. We view this admission on her part skeptically, since she conceded at the hearing in April that she felt the same way about him as she

did in the beginning and that she intended seeing him, we suspect, as soon as the custody matter is settled. They are employed at the same company and see each other frequently.

Following the separation, the petitioner signed a separation agreement giving custody of the child to her husband, making provisions therein for rights of visitation on her part. The evidence discloses that the mother did not exercise all of the visitation rights to which she was entitled under the terms of the agreement.

We developed a definite impression from listening to her testimony and that of her husband that there was some lack of demonstrative affection for this child on her part.

The child is presently cared for in the home of the husband's parents, and the petitioner concedes that this home is a perfectly proper and good home and that the child receives tender and loving care from her father. The babysitting arrangement presently is the same as it had been when the parties resided together, and it would be the same arrangement if the wife had custody of this child. We must also here note that we observed these parties and this child in court and the child's attitude toward its mother was somewhat less than enthusiastic, and this adds credence to the husband's testimony that his wife was indifferent toward the child and demonstrated little love or affection for the child, even though he concedes that his wife does love her.

Before undertaking the analysis of the legal principles to be applied in this situation, we would like to make a few observations. The opening sentence in the Lambeth Report[1] is as follows:

---

[1] Report of Committee 5 of the Lambeth Conference of 1958. The June conference was held in London and consisted of a study of the family in contemporary society by Bishops of the Anglican Church.

"Everywhere in the world there is restless concern for the well-being of the family as the basic institution in society."

The Commonwealth of Pennsylvania, through its courts and its legislature owes a most solemn obligation to the family. The State has a responsibility to serve them quite as truly as families may be expected to serve the State. Husbands and wives owe an equally solemn duty to their families. Children are a trust with a prior claim on parents, even before the claims of their own personal liberty. The husband or wife who puts personal happiness before the need of his family for stability is denying the true claims of his or her responsibilities and the just balance of the purposes for which marriage and the home were created. There is no God-given "right to happiness" which can override the profound claims of children to a stable and independent home.

There is evidence about us as a result of our present American culture of a change of the roles of the family members. The woman, with improved political and employment status and with more education and better household facilities, is much more an equal partner in the home and the community than she has ever been before. She is often employed outside with the result that, while there is a gain in income, there is a loss in time at home. On the other side of the coin, we find that the man is more a participant in homemaking than ever before, and the responsibility of child rearing and housekeeping is more commonly done on a joint basis. It is also clear that where a husband or a wife are not mature enough to use this increased freedom well, it has resulted in the breakdown of family life. Likewise, the changing relationship of husband and wife, and the greater involvement of the father with the children has brought about new attitudes toward family life. With this background, and being mindful that this

mother has destroyed one family unit and threatens to destroy another, we shall explore the legal precepts applicable to the instant case.

The citations are legion for the general proposition that a child of tender years should be awarded to its mother, for common experience has shown us that it is she who should nurture the best interest and welfare of a young child. While this is true, and conceded by both of counsel, we must view and examine this precept in the light of changing conditions as noted hereinbefore and in light of our knowledge that this is a general rule and not an absolute one.

Here we have a mother whom we find as a fact has, in the past, lacked demonstrative love toward her child. We have a wife who has lapsed from moral standards, not only once, but admittedly on three or four occasions and continues being interested in a man not her husband, but the husband of another and father of another child. For this reason, she separated herself from her husband and voluntarily and with understanding, signed an agreement giving the father custody of the minor child of the marriage. By her conduct, this wife has violated her legal duties toward her husband, for he and he alone is entitled to her companionship, services and affection: Gazzam v. Reading, 202 Pa. 231. It has been frequently stated, and it is in common sense, that the law does not and should not encourage the living apart of a husband and wife while the marital relation exists in force: Cunningham v. Cunningham, 48 Pa. Superior Ct. 442. Clearly, the scale of justice balances heavily in favor of the husband, and it would be unjust to reward this wife with custody over the desires of a competent and fit father who would, in the final analysis, provide substantially the same custodial arrangements this child had prior to the separation and which the wife indicated she would furnish if she were awarded custody.

We are aware, however, that custody matters are not to be determined by principles of justice between two parents, but that the cardinal consideration is the welfare of the child, including its physical, intellectual, moral and spiritual well being: Commonwealth ex rel. Kraus v. Kraus, 185 Pa. Superior Ct. 167. All other factors are subordinate: Commonwealth ex rel. English v. English, 194 Pa. Superior Ct. 25; Commonwealth ex rel. Lees v. Lees, 196 Pa. Superior Ct. 32. Nor are we bound by any contract for custody, since these are but voidable agreements and must yield to the welfare of the child: Commonwealth ex rel. Children's Aid Society v. Gard, 362 Pa. 85; Enders v. Enders, 164 Pa. 266. However, if a parent has made an agreement surrendering custody of her child, such an agreement may have much weight as showing the unfitness of the parent. See 27 Am. Jur., Infants, §110. Here again, we opine that this mother has shown a serious emotional instability in that she put her professed love for a married man, not her husband, ahead of her affection for this child. While she continues in this disposition toward this man, she should not be this child's legal custodian, for she might again be inclined to relegate the child's welfare to a secondary position, her primary emotional disposition favoring the other man. Should her situation in this respect alter in the future, she may ask to have the matter of custody reviewed, since such orders are never final and are subject to alteration with changing conditions: Commonwealth ex rel. Cleary v. Weaver, 188 Pa. Superior Ct. 197.

One final consideration worthy of note is the husband's attention to the child's spiritual training. He attends church regularly and takes the child to Sunday School. On the other hand, the wife does not attend church. While religious considerations are not necessarily controlling, they should be given consideration:

Commonwealth ex rel. Shamenek v. Allen, 179 Pa. Superior Ct. 169.

In awarding custody of a child, the court may take into consideration the moral digression and general character of the spouses of the contending parties, since the child will necessarily come under the influence of one or the other: 24 P. L. Encyc. 391, §12. This we have done, and while liberally awarding visitation rights to the mother, we have given greater custody rights to the father whose influence will be more beneficial to the child at the present time.

And now, to wit, January 9, 1963, the exceptions are dismissed. Each party to pay his own costs.